IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Jane Doe, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Richard Macleod, et al., ) <br> ) <br> Defendants. ) | Case No. 3:18-cv-03191-SEM-TSH |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE ILLINOIS DEPARTMENT OF CORRECTIONS TO PRODUCE MATERIAL <u>RESPONSIVE TO THE JANUARY 11, 2019 SUBPOENA</u>**

Plaintiff is a former female prison inmate who was repeatedly sexually assaulted by her male counselor at Logan Correctional Center ("Logan"). Plaintiff's treatment was not isolated. Rather, a widespread pattern of sexual assaults at Logan has been reported by numerous female inmates and corroborated during investigations by state law enforcement agencies. Plaintiff now brings claims under 42 U.S.C. § 1983 against the individuals responsible for her mistreatment.

Many of the documents relevant to Plaintiff's claims are in the possession of the Illinois Department of Corrections ("IDOC"). Thus, on January 11, 2019, Plaintiff served a subpoena on IDOC seeking records related to, among other things, Plaintiff's and other staff-on-inmate sexual assaults at Logan. (*See* Ex. A, IDOC Subpoena.) IDOC produced certain information related to *Plaintiff's* sexual assault, but objected to producing materials related to *other* staff-on-inmate sexual assaults—which are responsive to Request No. 13—on relevance and burden grounds. (*See* Ex. B, IDOC Subpoena Response at No. 13.) These objections fail for numerous reasons.

***First***, information regarding other staff-on-inmate sexual assaults at Logan is plainly relevant to Plaintiff's claims, including because it shows defendants were on notice of the sexual

assault problem at Logan, failed to take action to prevent or stop the misconduct, and acted with deliberate indifference to Plaintiff's well-being.  For example, Plaintiff asserts an Eighth Amendment claim against former Logan warden Margaret Burke. (Dkt. No. 1 ¶ 42.)  Evidence regarding the number and nature of sexual assaults at Logan goes to whether Burke: (1) knew or should have known of the problem; (2) failed to enforce anti-assault policies or otherwise adequately respond; (3) tolerated a widespread culture of sexual assault; and (4) thereby created the toxic atmosphere that allowed Plaintiff's assault to occur.  *See e.g.*, *Keith v. Koerner*, 843 F.3d 833, 846–47 (10th Cir. 2016) (prison warden individually liable where sexual assault problem was widespread and the warden "fail[ed] to enforce policies" and "created an atmosphere where employees … faced minimal supervision and little threat of investigation or discipline for inappropriate sexual behavior with inmates.").

*Second*, IDOC's objection that the request "poses an undue burden" because "[i]t is unclear" how IDOC could identify *every* responsive document "without speaking with every offender and correctional employee" (Ex. B at No. 13) is without merit.  IDOC cannot refuse to produce *any* responsive documents—including readily available complaints and investigatory files—on the grounds that producing *every* responsive document is burdensome.  Indeed, IDOC was recently ordered to respond to a similarly "broad" request in another case pending in this Court involving similar allegations.  *See Farris v. Kohlrus*, No. 17-cv-3279, 2019 WL 351876, at *11 (C.D. Ill. Jan. 29, 2019) (ordering IDOC "to produce non-privileged documents relating to ***any investigation*** or discipline of ***any correctional officer*** at Logan for failing to report officer-on-offender sexual misconduct that may have occurred at Logan from December 4, 2010 to December 31, 2015") (emphasis added).  Plaintiff remains willing to meet and confer with IDOC to discuss the scope of this request to minimize any undue burden on IDOC.

Beginning on March 7, 2019, Plaintiff repeatedly requested to meet and confer with IDOC regarding these (and other) deficiencies. (*See e.g.*, Ex. C, March 7, 2019 email and letter from C. Sharkey to C. Ankney; Ex. D, March 18 and 25, 2019 emails from N. Wasdin to C. Ankney.) In those requests, Plaintiff explained to IDOC that, under the terms of the Court's scheduling order, Plaintiff is required to file any related motion to compel within 60 days of IDOC's deficient responses (*i.e.* today). (Ex. D, citing Dkt. No. 21 ¶ 6.) IDOC substantively responded for the first time on March 25 at 9:37 p.m. (*i.e.* late last night). (*See id.*) In its response, IDOC made clear that it "maintains its objections" to Request No. 13, and will not produce the requested materials. Accordingly, pursuant to Federal Rules of Civil Procedure 26 and 45, Plaintiff respectfully requests that this Court enter an order compelling IDOC to produce documents and communications responsive to Request No. 13 regarding other staff-on-inmate sexual assaults at Logan.

## BACKGROUND

Plaintiff, Jane Doe, brings this lawsuit pursuant to 42 U.S.C. § 1983 for violation of the Eighth and First Amendments of the U.S. Constitution. (Dkt. No. 1 ¶¶ 40–48.) Plaintiff was a prisoner at Logan from March 2015 to July 2018. (*Id.* ¶ 8.) During that time period, Plaintiff was one of numerous female inmates who were sexually assaulted by male corrections personnel. (*Id.* ¶¶ 37–38; *see also e.g.*, Ex. E, Illinois State Police Investigative Summaries, at *e.g.*, ISP 00001– ISP 00027.)[1] Plaintiff in particular was assaulted by a Corrections Counselor named Richard Macleod. (*E.g.*, Dkt. No. 1 ¶¶ 15–21.) Macleod was a known problem at Logan. There is evidence that he assaulted numerous Logan inmates. (Ex. E at ISP 00021–ISP 00026.) When told that

---

[1] Indeed, sexual assaults at Logan are the subject of several other cases currently pending in this Court. *See Farris v. Kohlrus*, No. 17-cv-3279 (C.D. Ill.); *Doe v. Ziemer*, No. 18-cv-3234 (C.D. Ill.).

3

Macleod was alleged to have had sex with inmates in her office, Macleod's former supervisor stated "I would not doubt it." (Ex. F, ISP Investigatory File, at 3.)

With respect to Plaintiff in particular, Macleod (i) exposed himself to Plaintiff, (ii) made sexual comments to Plaintiff (including while she was on the phone with her daughter), and (iii) had non-consensual sexual intercourse with Plaintiff. (*E.g.*, Dkt. No. 1 ¶¶ 15–21.) Macleod threatened Plaintiff that, if she ever reported his conduct, supervisory IDOC personnel would protect him and punish her. (Dkt. No. 1 ¶¶ 24–25.) Sure enough, immediately after she reported her assault, supervisory officer Todd Sexton and warden Margaret Burke punished Plaintiff by involuntarily transferring her to a distant prison facility. (*Id.* ¶¶ 28–30.)

Two of the central issues in this case are: (1) whether Sexton was aware that Macleod had sexually assaulted inmates and protected him; and (2) whether Burke was aware of the widespread culture of sexual assault at Logan and enabled it by failing to enforce anti-assault policies, conduct meaningful investigations, or discipline offending corrections staff. Accordingly, on January 11, 2019, Plaintiff served a subpoena on IDOC seeking, among other things "[a]ll Documents and Communications regarding sexual contact, sexual misconduct, or sexual assault committed by IDOC employees or Logan Correctional Center employees against inmates at Logan Correctional Center." (Ex. A at No. 13.) On January 25, 2019, IDOC responded to the subpoena and objected to producing that information on the grounds that the request "is vague, overbroad in scope, seeks information wholly irrelevant to the claims in this case, and is disproportional to the needs of this case." (Ex. B at No. 13.)[2]

---

[2] IDOC's responses—and its subsequent and materially similar responses served in connection with a February 2019 production of documents (*See* Ex. G, IDOC's First Suppl. Resp. to Pl.'s January 11, 2019 Subpoena)—contain a number of other improper objections and limitations that were resolved during IDOC's and Plaintiff's meet and confer over the past 24 hours. (*See generally* Ex. D.) In particular: (1) IDOC agreed to produce material it had previously withheld

4

**ARGUMENT AND AUTHORITIES**

The scope of material obtainable pursuant to a Rule 45 subpoena is "as broad as what is otherwise permitted under Rule 26(b)(1)." *In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, No. 17-cv-01287, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) (citation omitted). Rule 26(b)(1) "gives expansive power to discover information 'regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Grayson v. City of Aurora*, No. 1:13-cv-01705, 2013 WL 6697769, at *2 (N.D. Ill. Dec. 19, 2013) (citation omitted). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* If a person objects to producing documents in response to a subpoena, the party serving the subpoena, "may move the court … for an order compelling production." FED. R. CIV. P. 45(d)(2)(B)(i); *see also SEC v. Hyatt*, 621 F.3d 687 (7th Cir. 2010) (same). "District courts enjoy broad discretion when considering motions to compel, and have consistently adopted a liberal interpretation of the discovery rules." *Grayson*, 2013 WL 6697769, at *2 (internal citations and quotations omitted).

**I.   Evidence Regarding Other Staff-On-Inmate Sexual Assaults Is Relevant And Within The Scope Of Permissible Discovery.**

According to IDOC, Plaintiff's Request No. 13 is "vague, overbroad in scope, seeks information wholly irrelevant to the claims in this case, and is disproportional to the needs of this case." (Exs. B & G at No. 13.) These objections are without merit because evidence related to

---

on "investigatory privilege" grounds, (2) IDOC confirmed that it is not withholding materials responsive to Request Nos. 1-3 on the basis of its objections that the requests are "vague, overbroad and disproportional to the needs of the case"; and (3) IDOC's counsel sent certain proposed additional search terms to IDOC and stated that he "do[es] not believe there will be a problem with running the additional terms to obtain relevant emails" in response to Requests Nos. 9-12. (*See* Ex. D, March 26 email from C. Ankney to N. Wasdin.) To the extent IDOC agrees to run the search terms, Court intervention is not needed on these issues.

5

other sexual assaults at Logan is plainly relevant to Plaintiff's claims and well within the broad scope of discovery contemplated by Rule 26(b)(1). The following are just examples.

***First***, evidence of other sexual assaults is relevant to showing that warden Burke was on notice of the sexual assault problem at Logan but failed to implement and enforce Logan's anti-assault policies, which goes to her individual liability for Plaintiff's assault. For example, in *Keith*, the plaintiff survived summary judgment on her Section 1983 claims against a prison warden with evidence showing, among other things, that the prison (i) "fac[ed] a high[] number of allegations of sexual misconduct," (ii) did not "seriously investigate[]" the allegations, (iii) routinely accepted a staff members' denial over an inmate's allegation, and (iv) "failed to impose meaningful discipline" when "a claim of sexual misconduct was supported by corroborating evidence." *Keith v. Koerner*, 843 F.3d 833, 843–46 (10th Cir. 2016). The court held that "a reasonable jury could infer that [the warden's] practices created an atmosphere where employees … faced minimal supervision and little threat of investigation or discipline for inappropriate sexual behavior with inmates," and thus "that [the warden] was personally involved in failing to enforce policies in a way that allowed sexual misconduct to occur at [the prison]." *Id.* at 846–47.[3] So too here. Documents regarding the number and nature of sexual assaults at Logan, and the prison's response

---

[3] *See also Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) ("[Defendant's] liability under § 1983 as Cole's supervisor requires some evidence that he knew about Cole's sexual misconduct and facilitated, approved, condoned, or ***turned a blind eye to it.***") (emphasis added); *Bostic v. Vasquez*, No. 2:15-CV-429-PRC, 2018 WL 1762847, at *5 (N.D. Ind. Apr. 12, 2018) (finding that supervisor "w[as] aware of problems and investigations and past incidents" of sexual assault and "possessed the power, and presumably the opportunity, to prevent [offending officer] from continuing to engage in similar misconduct" but "acted with deliberate or reckless disregard for [plaintiff's] constitutional rights by 'turning a blind eye'" to the risk of plaintiff's sexual assault); *Powell v. City of Chicago*, No. 17-cv-5156, 2018 WL 1211576, at *9 (N.D. Ill. Mar. 8, 2018) (plaintiff stated a § 1983 claim against supervisory officers where supervisors had received prior civilian complaints and, thus, knew that the arresting officers had previously engaged in "fabricating evidence and manufacturing false charges against persons at the Ida B. Wells Homes.").

thereto, will show, among other things, that Burke: (1) knew or should have known of the problem; (2) failed to enforce anti-assault policies or otherwise adequately respond; (3) tolerated a widespread culture of sexual assault; and (4) thereby created the toxic atmosphere that allowed Plaintiff's assault to occur. IDOC's scope and relevance objections to producing this evidence fail for this reason.

IDOC's argument to the contrary—that this evidence is irrelevant because "there is no policy claim, … there are only individual claims … based on [the defendants'] individual actions and inactions," which IDOC advanced for the first time in an email late last night (*see* Ex. D)—fails for this same reason. There need not be a "policy claim" to make this evidence relevant. Rather, as *Keith* and similar cases make clear, evidence related to other sexual assaults at Logan is relevant to Plaintiff's *individual* claims, including because it goes to the *individual* defendants' notice of a sexual assault problem, failure to enforce anti-assault policies or otherwise respond, and creation and tolerance of the environment that resulted in Plaintiff's assault, all of which speaks to, among many other things, their deliberate indifference to Plaintiff's well-being. *See Keith*, 843 F.3d at 840 (noting that similar evidence was introduced "[a]s an alternative basis to establish personal involvement … [of] Warden Koerner").

***Second***, evidence of other sexual assaults at Logan is also relevant to showing that Logan employees received insufficient training on inmate interactions, which is a related but independent basis for Burke's liability. *Keith*, 843 F.3d at 838–39 (noting that "a supervising prison official may be liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.") (internal quotations and citation omitted). For example, Logan purportedly has a "zero tolerance policy" for sexual contact between staff and inmates "with or without [inmate] consent." (Ex. H, Logan Institutional Directive

7

04.01.301, at IDOC Subpoena 000475–IDOC Subpoena 000489.) Even putting aside the widespread pattern of violations of that policy, at least one Logan staff member believes his "sexual relationship with [an inmate]" was appropriate because it was "consensual" and "initiated by her" (the inmate disputes those assertions). (Ex. E at ISP 00005–ISP 00006). This evidence—and any similar evidence produced by IDOC in response to the subpoena—tends to show Logan staff received *no* training regarding sexual interactions with inmates, and is thus relevant in this case for that separate reason.

*Third*, evidence of other sexual assaults is also relevant to Plaintiff's Eighth Amendment claims against Sexton. (Compl. ¶ 42.) For example, Macleod told Plaintiff that Sexton—who was a supervisory officer at Logan and a member of its Internal Affairs department—would help him avoid punishment in the event a sexual assault was reported. (Dkt. No. 1 ¶¶ 6, 25, 42.) Evidence concerning Sexton's investigation of other sexual assaults goes to whether he protected Macleod or afforded him special treatment.

*Fourth*, evidence of other sexual assaults is also relevant to Plaintiff's claim for retaliatory prison transfer. (Compl. ¶¶ 46–47.) For example, if other inmates who reported sexual assault were not immediately and involuntarily transferred, then that would undermine any argument that the transfer was ordinary and appropriate. And if they were, then that would show that Logan supervisors—like Burke and Sexton—responded to the abuse problem by punishing the victims instead of the perpetrators.

## II.     IDOC's Undue Burden Objection Is Without Merit.

IDOC also objected to Request No. 13 on the grounds that it "poses an undue burden" because "[i]t is unclear how [IDOC] could discern and identify" *every* responsive documents "without speaking with every offender and correctional employee." (Exs. B & G at No. 13.) This objection is without merit, too.

Courts analyzing burden objections to Rule 45 subpoenas evaluate "the balance of competing needs," including the burden of compliance and the relevance of the materials sought. *Ligas v. Maram*, No. 05 C 4331, 2007 WL 4225459, at *5 (N.D. Ill. Nov. 27, 2007); *see also Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (similar). Here, in order to properly manage its facilities, IDOC *must* have (i) a reasonably accessible method of tracking sexual assault complaints at Logan, and (ii) access to the formal investigatory files related thereto. Thus, the burden of producing *at least some* responsive information is low. On the other hand, this evidence (i) is critical to showing, among other things, Burke's individual liability for Plaintiff's sexual assault, and (ii) cannot be obtained from defendants directly. (*See* Section I, *supra*.) Thus, the importance of the evidence is high and the "balance of competing needs" weighs in favor of production.[4]

IDOC's argument to the contrary is without merit. IDOC need not identify "every" responsive document, or interview "every offender or correctional employee," in order to produce reasonably accessible complaints and investigatory files. (Exs. B & G at No. 13.) IDOC cannot avoid producing *any* responsive materials on the grounds that producing *all* would be a burden. In any event, Plaintiff remains willing to meet and confer with IDOC regarding the scope of this

---

[4] This is particularly true here, where IDOC is a "third party" more in name than substance. IDOC is responsible for the conditions of confinement at Logan and other Illinois prisons. Certain IDOC personnel committed the sexual assaults at issue. IDOC investigated those assaults, and may have sole possession of the files and communications related to those investigations. IDOC is thus unlike a typical third party subpoena recipient, whose connection to a case is incidental and whose burden in responding to a subpoena is afforded "special weight" by courts considering a motion to quash or compel. *Contra Easy Life, LLC v. GoDaddy Operating Co., LLC*, No. 15-cv-3031, 2015 WL 13620575, at *2 (C.D. Ill. Oct. 1, 2015) (quashing subpoena to non-party because "[t]he documents at issue are available from [a party]" and "[t]he Subpoenas will require non-parties to perform needless searches for cumulative information").

9

request. Plaintiff is willing to work with IDOC to minimize any burden through, among other things, appropriate source and date limitations, such as by limiting any search to the time period of Plaintiff's incarceration. *Cf. Farris v. Kohlrus*, No. 17-cv-3279, 2019 WL 351876, at *11 (C.D. Ill. Jan. 29, 2019) (ordering IDOC "to produce non-privileged documents relating to ***any investigation*** or discipline of ***any correctional officer*** at Logan for failing to report officer-on-offender sexual misconduct that may have occurred at Logan from December 4, 2010 to December 31, 2015." ).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order compelling IDOC to produce documents and communications responsive to Request No. 13 regarding other staff-on-inmate sexual assaults at Logan.

Dated: March 26, 2019

/s/ *Nicholas F. Wasdin*
Scott W. Fowkes, P.C.
Nicholas F. Wasdin
Christina E. Sharkey
Shannon L. Gonyou
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Alan Mills
Elizabeth Mazur
Nicole Schult
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan Road
Chicago, IL 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224

*Attorneys for Plaintiff*

## STATEMENT OF COMPLIANCE WITH FRCP 37

Plaintiff has attempted to confer with IDOC in an effort to resolve these issues without court action. On March 7, 2019, Plaintiff's counsel sent IDOC's counsel a letter (via email and U.S. mail) regarding the deficiencies with IDOC's responses and requesting to meet and confer no later than March 18, 2019. (Ex. C, March 7, 2019 email and letter from C. Sharkey to C. Ankney.) IDOC did not respond. On March 18, 2019, Plaintiff's counsel sent IDOC's counsel an email requesting to meet and confer and noting the impending deadline to file a motion to compel under the Court's scheduling order. (Ex. D, March 18, 2019 email from N. Wasdin to C. Ankney.) On March 20, 2019, Plaintiff's counsel left IDOC's counsel a voicemail regarding the letter and the impending deadline to file a motion to compel. On March 24, 2019, IDOC's counsel sent Plaintiff's counsel an email indicating his intention to substantively respond to the March 7 letter by March 25. (Ex. D, March 24, 2019 email from C. Ankney to N. Wasdin.) On March 25, 2019 at 9:50 a.m., Plaintiff's counsel requested to confer via telephonic conference, and again reiterated the March 26 deadline to file a motion to compel under the Court's scheduling order. (Ex. D, March 25, 2019 email from N. Wasdin to C. Ankney.) On March 25, 2019 at 9:37 p.m., IDOC's counsel substantively responded for the first time. (Ex. D, March 25, 2019 email from C. Ankney to N. Wasdin.) Plaintiff's counsel and IDOC's counsel further conferred via email on March 26, 2019. (Ex. D, March 26, 2019 email from C. Ankney to N. Wasdin.)

Dated: March 26, 2019                                   Respectfully submitted,

                                                        /s/ *Nicholas F. Wasdin*_____
                                                        *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on March 26, 2019, a true and correct copy of the foregoing was electronically filed and served upon counsel of record via the Court's CM/ECF system.

A copy of the same was served by electronic mail and by depositing same in the United States mail, postage prepaid, addressed to the following:

>Clayton J. Ankney
>Assistant Attorney General
>500 South Second Street
>Springfield, IL 62701
>*Counsel for Third Party IDOC*

Copies of publicly available documents were served by electronic mail and by depositing same in the United States mail, postage prepaid, addressed to the following:

>Richard Macleod
>301 West Main Street
>Thayer, IL 62689

Respectfully submitted,

/s/ *Nicholas F. Wasdin*
Nicholas F. Wasdin
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200