IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jane Doe, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:18-cv-03191-SEM-TSH |
| | ) | |
| v. | ) | |
| | ) | |
| Richard Macleod, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL THE ILLINOIS DEPARTMENT OF CORRECTIONS TO PRODUCE MATERIAL RESPONSIVE TO THE JANUARY 11, 2019 SUBPOENA**

The Illinois Department of Corrections' ("IDOC") response to Plaintiff's motion to compel rests on a number of meritless legal and factual assertions. Among other things, IDOC: (1) mischaracterizes Plaintiff's claims and the governing law; (2) misstates Plaintiff's proposals regarding the scope of requested materials; (3) asserts arguments it *expressly* waived during its meet and confer with Plaintiff; and (4) advances new and meritless objections not contained in its subpoena response. The Court should reject IDOC's attempt to avoid producing the requested documents, which are critical to Plaintiff's claims and well within the broad scope of discovery under Rule 26.

**ARGUMENT**

**I.     IDOC's Relevance Arguments Are Without Merit.[1]**

IDOC argues that information related to other sexual assaults is irrelevant because Plaintiff does not allege that "it was a policy that led to the sexual contact" between Plaintiff and Macleod.

---

[1]    IDOC's initial argument that Request No. 13 "is vague," and that it cannot tell whether Plaintiff is seeking materials related to "allegations" of sexual assault or only those sexual assaults that were "actually committed," is without merit. (Dkt. No. 31 at 2-3.) IDOC repeatedly ignored

(Dkt. No. 31 at 3-4.) IDOC misunderstands both Plaintiff's claims and the pleading requirements under Rule 8.

Plaintiff asserts an Eighth Amendment sexual assault claim against Defendants Burke and Sexton not because they physically participated in her sexual assault, but because, among other things, they "had the realistic opportunity to intervene to prevent or stop the misconduct from occurring, and failed to do so." (Dkt. No. 1, Complaint ¶ 42.) As explained in detail in Plaintiff's opening brief, two legal theories on which such a claim may be based are that a supervisory official: (1) failed to enforce anti-assault policies; and/or (2) a failed to train staff regarding appropriate inmate interactions. (Dkt. No. 25-1 at 6-8 (citing *e.g.*, *Keith v. Koerner*, 843 F.3d 833, 843–46 (10th Cir. 2016)).) IDOC's brief entirely ignores those issues—and the case law cited in Plaintiff's brief discussing the evidence relevant to each—and thus comes nowhere near rebutting that the requested information is plainly relevant here.

Contrary to IDOC's assertion—which is not supported by a single citation to legal authority (*see* Dkt. No. 31 at 4)—Plaintiff was under no Rule 8 obligation to explain those theories in greater detail in her Complaint. *See Am. Kitchen Delights, Inc. v. Signature Foods*, LLC, No. 16-CV-08701, 2018 WL 1394032, at *2 (N.D. Ill. Mar. 20, 2018) ("In setting forth a plausible claim, a plaintiff is not required to plead legal theories. … the pleadings are not the stage of the litigation when specific legal theories must be identified and their viability established") To the contrary,

---

Plaintiff's requests to meet and confer regarding the subpoena prior to Plaintiff's motion to compel. (*See* Dkt. No. 25-1 at 11.) To the extent IDOC believed the request was "vague," the appropriate response was to seek clarity from Plaintiff during a meet and confer, not to ignore Plaintiff for weeks and force her to file a motion to compel. In any event, Plaintiff's motion to compel makes clear what she would have told IDOC had it engaged with Plaintiff beforehand—she is seeking both: (i) complaints of other staff-on-inmate sexual assaults at Logan (regardless of whether IDOC believes those allegations are truthful); and (ii) documents related to IDOC's investigation and disposition of those complaints. (*See* Dkt. No. 25-1 at *e.g.*, 2, 4.)

"legal theories may be learned and developed during discovery." *Id.* And thus, after Plaintiff stated her Eighth Amendment claims against Burke and Sexton, she went to work developing those claims by seeking, among other things: (1) policy documents from IDOC to determine whether Logan had an anti-assault policy; and (2) information from ISP and IDOC regarding the number and nature of sexual assault claims at Logan. In response to Plaintiff's requests, IDOC produced a "zero tolerance" sexual contact policy "with or without inmate consent" (*see* Dkt. No. 25-1 Ex. H), and ISP produced its investigatory files regarding a number of sexual assaults at Logan, which make clear that Logan staff regularly violated and had no training on the policy (*see* Dkt. No. 25-1 Ex. E). For these and other reasons, Defendants are liable not, as IDOC suggests, because there was "a policy which led to the sexual contact between Plaintiff and Richard Macleod" (Dkt. No. 31 at 4), but rather because they *failed* to enforce and provide training on a policy that should have prevented Plaintiff's assault, and thereby facilitated the toxic environment that allowed it to happen. Thus, contrary to IDOC's assertions, evidence regarding the scope of the defendants' failures in these regards—*i.e.* evidence related to *other* staff-on-inmate sexual assaults at Logan—is plainly relevant to Plaintiff's claims.

In any event, in light of the discovery produced to date, Plaintiff is (and has been) in the process of identifying additional defendants that were in a position to implement and enforce Logan's anti-assault policies. Plaintiff intends to file her amended complaint early next week. Even though the amendment is not necessary to resolve Plaintiff's motion to compel, it will moot IDOC's meritless assertion that Plaintiff was required to plead something more than she already has to access the requested materials. For all of these reasons, IDOC's relevance objections should be overruled.

## II. IDOC's "Overbroad In Time" Objection Is Without Merit.

IDOC argues that "[a]t no point has Plaintiff limited her request to a relevant time period nor has she proposed a time period which she believes to contain relevant documents responsive to her request." (Dkt. No. 31 at 4-5.) Even putting aside IDOC's repeated refusal to meet and confer with Plaintiff prior to her motion to compel (*see* Dkt. No. 25-1 at 11), IDOC's assertion is not accurate. Plaintiff's opening brief states: "Plaintiff is willing to work with IDOC to minimize any burden through, among other things, appropriate source and date limitations, ***such as by limiting any search to the time period of Plaintiff's incarceration***." (*Id.* (emphasis added).) IDOC cannot ignore Plaintiff's requests to meet and confer, force Plaintiff to file a motion to compel, and then argue in opposition that ***Plaintiff*** has failed to work with IDOC to tailor the Request.

## III. IDOC Waived Its "Investigatory Privilege" Objection, Which In Any Event Is Without Merit.

IDOC argues that the material is protected by the "law enforcement investigatory privilege." (Dkt. No. 31 at 5–6.) This argument fails for two reasons. First, IDOC ***expressly waived*** this objection during the parties' meet and confer. In particular, several hours before Plaintiff filed her motion to compel, IDOC's counsel agreed to produce all material withheld on "investigatory privilege" grounds subject to an "Attorneys' Eyes Only" protective order. (Dkt. No. 25-5, March 26 emails between N. Wasdin and C. Ankney.) Based on that representation, Plaintiff revised her brief shortly before filing to remove the arguments related to that objection. (*See* Dkt. No. 25 at n.2.) On that record, the Court should disregard IDOC's investigatory privilege argument as waived. But to the extent the Court is inclined to consider it, IDOC's reliance on the investigatory privilege here fails for several reasons.

***First***, the investigatory privilege cannot be asserted without "evidence indicating that a 'responsible official' ha[s] determined that the privilege [i]s applicable or an explanation from such an official about why the information in the [ ] file falls within the scope of the privilege." *Craig*, 2010 WL 529447, at *2 (internal quotations and citation omitted). "[T]he responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying ***with particularity*** the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Pontarelli Limousine, Inc. v. City of Chicago*, 652 F. Supp. 1428, 1431 (N.D. Ill. 1987) (emphasis added) (citation omitted); *Lewis ex rel. Hicks v. City of Chicago*, No. 04 C 3904, 2004 WL 2608302, at *2 (N.D. Ill. Nov. 16, 2004) (same). Here, IDOC's response to the subpoena offers only the broad and generic assertion that the information "concern[s] an ongoing investigation." (Exs. B & G at Nos. 1–3, 6–15.) This assertion is not supported by ***any*** evidence that a responsible official has reviewed the information in question, let alone evidence (i) showing that such a person determined the privilege applies, and (ii) specifying with particularity the information for which protection is sought and the reasons that information falls within the scope of the privilege. Absent such evidence, IDOC cannot rely on the investigatory privilege here. *See Padilla v. City of Chicago*, No. 06-C-5462, 2009 WL 4891943, at *2 (N.D. Ill. Dec. 14, 2009) (granting motion to compel because "[t]he Defendants asserted the [investigatory] privilege … without providing any evidence that a 'responsible official' had ever assessed the [documents] in question," which "establishes a procedural bar to their asserted privilege"); *Craig*, 2010 WL 529447, at *2 (granting motion to compel where investigatory privilege objection was made "without providing any evidence that a 'responsible official' had ever assessed the [documents] in question").

***Second***, even if IDOC had evidence supporting its assertion that the material "concerns an ongoing investigation," that broad and generic assertion would nevertheless be insufficient to protect the information from production. "There is simply no support in the law" for the position that "documents must be protected solely because they relate to an ongoing investigation." *Bond v. Utreras*, No. 04 C 2617, 2006 WL 1343666, at *2 (N.D. Ill. May 12, 2006); *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 189 (N.D. Ill. 2019) ("The burden is on … the party asserting the privilege to show that it applies, and it ***must show more than an on-going investigation*** to demonstrate that the investigatory privilege should protect the documents.") (emphasis added) (internal citations omitted). To the contrary, courts routinely compel production of investigatory materials where, as here, the information is plainly relevant and the withholding party has not explained in detail how any particular investigation would be compromised by its production. *Craig*, 2010 WL 529447, at *2 (granting motion to compel where investigatory privilege objection was made "without explaining[—]as opposed to generalizing—why specific documents within each of the [investigatory files] need to be protected"); *Munive v. Town of Cicero*, No. 12 C 5481, 2013 WL 1286664, at *3 (N.D. Ill. Mar. 28, 2013) (granting motion to compel over investigatory privilege objection because ISP "has not explained exactly how its investigation would be compromised if its files were produced").

***Third***, even if the privilege may apply to some of the withheld information, production of that material would nevertheless be appropriate subject to an "attorneys' eyes only" designation during discovery. Plaintiff will treat such information confidentially and use it only for the purposes of this case.[2]

---

[2] *See Rodriguez*, 329 F.R.D. at 190 (granting motion to compel investigatory materials and noting that "[o]ut of an abundance of caution, however, the court will follow the lead of similar cases from this district where—in deference to the [producing party's] concern that disclosure

***Fourth***, the Illinois State Police has ***already*** produced thousands of pages related to its investigation of numerous staff-on-inmate sexual assaults at Logan. (*E.g.*, Ex. E, ISP 00001–ISP 00027.) Unlike IDOC, the ISP did not assert that disclosure of these materials would undermine any investigation. IDOC has provided no basis for taking a contrary position with respect to its own investigation of the same or similar incidents.

***Fifth***, IDOC was recently ordered to produce investigatory materials in *Farris v. Kohlrus*, a case pending in this Court and involving similar allegations. *See* No. 17-cv-3279, 2019 WL 351876, at *11 (C.D. Ill. Jan. 29, 2019). In particular, in *Farris*, this Court "direct[ed] [IDOC] to produce non-privileged documents relating to ***any investigation*** or discipline of ***any correctional officer*** at Logan for failing to report officer-on-offender sexual misconduct that may have occurred at Logan from December 4, 2010 to December 31, 2015." *Id.* (emphasis added). IDOC's response to the subpoena in this case provides no basis for withholding similar investigatory information here.

## IV. IDOC's New "Right To Privacy" Objection Is Without Merit.

IDOC argues that the requested material raises "significant privacy concerns" because it may "put the most intimate details of the lives of other offenders into the public light." (Dkt. No. 31 at 6-7.) Putting aside that IDOC did not raise this objection in its subpoena response, and thus waived it, any concerns regarding third party privacy can be addressed with an appropriate confidentiality designation under a protective order. *E.g.*, *Biggers v. Green Acres Health Servs., Inc.*, No. 5:14-CV-10, 2014 WL 6460705, at *2 (W.D. Ky. Nov. 17, 2014) ("While this court is

---

of otherwise private information connected to an on-going investigation could impact the statements of future witnesses—the courts ordered the files to be produced subject to an 'attorneys' eyes only' ('AEO') designation, allowing [plaintiff's] attorneys to review the emails and use them only for purposes of this case"); *Preston v. Unknown Chicago Police Officer No. 1*, No. 10 C 0136, 2010 WL 3273711, at *2 (N.D. Ill. Aug. 16, 2010) (similar).

7

sensitive to the privacy interests implicated in the subpoena of third party medical records, the agreed protective order in place (DN 17) adequately protects the [third party]."); *see also In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000).[3]

## V.  IDOC's "Undue Burden" Objection Is Without Merit.

IDOC argues production would be an undue burden for two reasons, neither of which have merit. (Dkt. No. 31 at 7-9.) First, although IDOC concedes that Burke's and Sexton's knowledge "is directly at issue in this lawsuit," it argues that producing the requested information creates an undue burden because "Plaintiff has made no showing that [Defendant] Burke and [Defendant] Sexton are incapable of providing discoverable information about their knowledge" directly. (Resp. at 8.) This objection is difficult to credit since IDOC's counsel also represents those defendants, has delayed responding to Plaintiff's discovery requests for almost two months, and is currently several weeks *past* the most recent agreed due date. But more fundamentally, the individual defendants—at least one of which no longer works at Logan—will almost certainly ***not*** have access to requested records regarding inmate allegations of sexual assault and IDOC's investigation thereof. To the extent they respond to their past-due discovery requests, and produce some or all of that material, then Plaintiff will notify IDOC that a duplicate production is not necessary.

Second, IDOC argues that searching all of the locations responsive information may exist would take "substantial time and resources." (Dkt. No. 31 at 9.) IDOC need not, however, search all of the locations identified in its brief in order to locate *at least some* documents responsive to

---

[3]  IDOC's related assertion that certain "medical and mental health information" of non-parties is protected by HIPAA is beside the point. (Dkt. No. 31 at 7.) IDOC has made no showing that inmate complaints or allegations of sexual assault, and records regarding IDOC's investigation thereof, are protected "medical and mental health information" under HIPAA.

8

Plaintiff's request. To the contrary, as noted in Plaintiff's opening brief, "in order to properly manage its facilities, IDOC *must* have (i) a reasonably accessible method of tracking sexual assault complaints at Logan, and (ii) access to the formal investigatory files related thereto." (Dkt. No. 25-1 at 9.) IDOC cannot continue to avoid producing *any* responsive information on the grounds that identifying every last scrap of responsive material would be overly burdensome.

## VI. IDOC's Proposed Production Limitations Are Overly Narrow.

Finally, IDOC argues that any order compelling production should "greatly limit[]" the documents to be produced. (Dkt. No. 31 at 9-10.) Although Plaintiff has been and is amendable to appropriate limitations to reduce any burden on IDOC, IDOC's proposal is too narrow and omits significant information needed for Plaintiff to present her claims at trial.

First, IDOC proposes omitting the names of victims and offenders for security and privacy reasons. (Dkt. No. 31 at 10-11.) Plaintiff needs this information to, among other things, examine witnesses, including Burke and Sexton, regarding their knowledge of any particular incident (indeed, it is difficult to image how such an examination could be conducted without names of the individuals involved). IDOC's concerns regarding security or privacy can be addressed with an appropriate confidentiality designation under a protective order.

Second, IDOC argues that production should be "limited to allegations [made against] corrections *counselors*," like Macleod. (Dkt. No. 31 at 11.) But Plaintiff's failure to enforce and failure to train theories go far beyond misconduct by corrections counselors like Macleod. Rather, the discovery produced to date shows that, after Logan's transition from a male to a female facility, there was a widespread failure to implement and enforce anti-assault policies and a resulting culture of sexual assault that far transcended assaults by Macleod and other counselors. (*E.g.*, Dkt. No. 25-1, Ex. E (ISP records showing assaults committed by non-counselor staff).) Limiting IDOC's production to allegations and investigations of assaults committed by counselors will

9

inhibit Plaintiff's ability to present that story at trial, and hold Defendants accountable for the full scope of their deliberate indifference.

Third, IDOC argues that "only that information known to the defendants in this case is relevant to Plaintiff's claims," and thus "any required production should be limited to those allegations of which the defendants in this case were aware" (Dkt. No. 31 at 11-12.) This assertion is wrong for two reasons. One, a Plaintiff can establish supervisor liability by showing either that the supervisor knew *or should have known* that they were creating an environment in which Plaintiff was likely to be sexually assaulted. *See Keith*, 843 F.3d at 847 (noting that sexual assault "Audit Report" stating that "Facility officials *should have recognized certain red flags and acted on them*" was sufficient to survive summary judgment on claim against warden). Thus, material regarding assaults beyond those Burke or Sexton had actual knowledge of is relevant to Plaintiff's claims. Two, under Rule 26, Plaintiff is entitled to broad discovery that reasonably may lead to admissible evidence, and thus, regardless of whether *IDOC* believes defendants did not have knowledge of a particular incident, Plaintiff is entitled to those documents so that *she* can examine defendants on that very issue.

**VII.    Plaintiff's Alternate Production Proposal.**

In light of the above considerations, Plaintiff requests that IDOC produce: (1) complaints or allegations of staff-on-inmate sexual contact, harassment or assault between March 2015 and July 2018 (the period of Plaintiff's incarceration); and (2) the files related to IDOC's investigation of those allegations. IDOC can produce this material subject to an appropriate protective order.

Dated:  April 26, 2019

/s/ *Nicholas F. Wasdin*
Scott W. Fowkes, P.C.
Nicholas F. Wasdin
Christina E. Sharkey
Shannon L. Gonyou
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Alan Mills
Elizabeth Mazur
Nicole Schult
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan Road
Chicago, IL 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

This is to certify that on April 26, 2019, a true and correct copy of the foregoing was electronically filed and served upon counsel of record via the Court's CM/ECF system.

A copy of the same was served by electronic mail and by depositing same in the United States mail, postage prepaid, addressed to the following:

> Clayton J. Ankney
> Assistant Attorney General
> 500 South Second Street
> Springfield, IL 62701
> *Counsel for Third Party IDOC*

Copies of publicly available documents were served by depositing same in the United States mail, postage prepaid, addressed to the following:

> Richard Macleod
> 301 West Main Street
> Thayer, IL 62689

Respectfully submitted,

/s/ *Nicholas F. Wasdin*
Nicholas F. Wasdin
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200