IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JANE DOE,<br>           Plaintiff,<br>v.<br><br>Richard Macleod, Warden Margaret Burke, Todd Sexton, Mike Atchison, Angela Locke, Kess Roberson, Christine Brannon, Patrick Keane, Felipe Zavala, Michael Funk, Alan Pasley, Clara Charron, Shari Klassen, Jennifer Meaker, Marcia Mibbs, Heidi Browne, Lisa Johnson, Debra Pollock, Melinda Eddy, Dr. Keena Peek, Grant Willis, Dr. Jennifer McClellan, Charles Gibbons, Bobbie LeDuc, Brent Blanco, and other as-yet-unidentified employees of the Illinois Department of Corrections,<br><br>           Defendants. | Case No. 3:18-cv-03191-SEM-TSH |

## COMPLAINT

Plaintiff JANE DOE, by her undersigned attorneys, for her complaint against defendants Richard Macleod, Warden Margaret Burke, Todd Sexton, Mike Atchison, Angela Locke, Kess Roberson, Christine Brannon, Patrick Keane, Felipe Zavala, Michael Funk, Alan Pasley, Clara Charron, Shari Klassen, Jennifer Meaker, Marcia Mibbs, Heidi Browne, Lisa Johnson, Debra Pollock, Melinda Eddy, Dr. Keena Peek, Grant Willis, Dr. Jennifer McClellan, Charles Gibbons, Bobbie LeDuc, Brent Blanco, and other as-yet-unidentified employees of the Illinois Department of Corrections alleges as follows:

### JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of plaintiff's rights as secured by the United States Constitution.

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

3.      Plaintiff Jane Doe is a 29-year-old resident of McHenry County, Illinois, who recently completed a sentence in the Illinois Department of Corrections ("IDOC"). She is a mother of a nine-year old daughter and she worked as a gymnastics instructor to young children for many years.

4.      Defendant Richard Macleod is employed as a Correctional Counselor II by IDOC. At all times relevant to this complaint, defendant Macleod provided counseling services for female prisoners at Logan Correctional Center ("Logan").

5.      Todd Sexton was a supervisory officer at Logan and a member of the prison's Internal Affairs Department at the time of the events giving rise to this case. On information and belief, defendant Sexton was friends with Macleod and knew about Macleod's sexual misconduct.

6.      At times relevant to this case, Defendants Mike Atchison, Mike Funk, Patrick Keane, Felipe Zavala, and Alan Pasley were administrators within IDOC and were responsible for developing, implementing, and overseeing implementation of the Prison Rape Elimination Act ("PREA") at all IDOC facilities, including Logan; for ensuring that administrators and staff at Logan and other IDOC facilities took steps to address the problem of custodial sexual assault; and for ensuring the reasonable safety of women in IDOC custody.

7.      At times relevant to this case, Defendants Christine Brannon, Kess Roberson, Angela Locke, and Margaret Burke held the position of Warden and/or Acting Warden of Logan. As wardens, these Defendants were responsible for: overseeing day-to-day operations at Logan, including compliance with PREA; for promulgating rules, regulations, polices, and procedures to

ensure reasonable safety of women prisoners at Logan; and for supervising, training, assigning, and disciplining counselors, correctional officers, and internal affairs investigators at Logan, including Defendants Richard Macloed and Todd Sexton. Additionally, Defendant Burke facilitated or approved the unwarranted retaliatory action taken in response to reports that plaintiff had been sexually assaulted and harassed by Richard Macleod.

8. At times relevant to this complaint, Defendants Clara Charron, Shari Klassen, Jennifer Meaker, Heidi Browne, Lisa Johnson, Debra Pollock, and Melinda Eddy held the position of PREA compliance manager and/or backup PREA compliance manager for Logan. In these positions, these Defendants were responsible developing, planning, and overseeing efforts to address the problem of custodial sexual assault at Logan and for ensuring compliance with PREA regulations and standards.

9. At times relevant to this case, Defendants Dr. Keena Peek, Grant Willis, Dr. Jennifer McClellan, Charles Gibbons, Bobbie LeDuc, and Brent Blanco were members of the PREA incident review team at Logan. In this role, these Defendants were responsible for reviewing investigations into allegations of sexual assault at Logan and for evaluating and recommending policy changes to prison administrators to address the problem of sexual assault at the facility.

10. At all times relevant to this complaint, each of the Defendants was acting within the scope of their employment and under color of law.

**FACTUAL ALLEGATIONS**

11. Ms. Doe was a prisoner in IDOC from March 2015 to July 2018.

12. Upon her admission to IDOC, Ms. Doe was housed at Logan, where she remained until August 2017.

13. During the period of her incarceration, a court order was in effect that gave Ms. Doe phone calls with her minor daughter once a week.

14. Ms. Doe loves her daughter dearly, and it was very difficult for her to be separated from her daughter while she was in prison. While incarcerated, the weekly phone calls to her daughter were extremely important to her.

15. In July 2016, Ms. Doe was placed in segregation for a period of 18-days. While in segregation, Ms. Doe was not permitted to have calls with her daughter.

16. After her discharge from segregation, on August 4, 2016, Ms. Doe was assigned to Housing Unit 7, where defendant Richard Macleod acted as counselor.

17. Ms. Doe needed to go through Macleod in order to reinstate her phone calls with her daughter and to receive a work assignment.

18. In response in Ms. Doe's request to reinstate the phone calls and obtain a work assignment, Macleod offered to "interview" her and had Ms. Doe go into a private room alone with him.

19. While alone in this room, Macleod told Ms. Doe that she was pretty and asked her if she would tell anyone if he had her come to his office to "help" him on the weekends, acknowledging that no other staff would be there at that time.

20. A few days later, Macleod called Ms. Doe to his office so that she could use his phone for the call to her daughter.

21. After Ms. Doe spoke with her daughter, Macleod kissed Ms. Doe, which shocked and surprised her. She immediately left the office after he kissed her.

22. At all times Macleod knew how important Ms. Doe's phone calls with her daughter were to her and he knew that Ms. Doe would need to go through him in order to have the calls.

23. Subsequently, on a weekly basis, Macleod would call Ms. Doe to his office for her phone calls, during which he would sexually assault her and subject her to sexual harassment.

24. Macleod would regularly expose himself to Ms. Doe and make sexual comments to her while she was on the phone with her daughter. On two occasions, he coerced her to have non-consensual sexual intercourse with him and on two other occasions he coerced her to perform non-consensual oral sex on him.

25. In November 2016, Ms. Doe was transferred to live in Housing Unit 4.

26. On information and belief, Ms. Doe should have been assigned a new counselor in the Housing Unit 4, but Macleod made a special effort to remain her counselor.

27. Ms. Doe did not report Macleod's misconduct because he told her that if she did so she would "get a year across the board," a phrase that plaintiff understood to mean that she would have to spend a full year in segregation and that she would have to spend an extra year at IDOC.

28. In addition, Macleod told Ms. Doe that he had a friend in IDOC, defendant Sexton, a Lieutenant who worked for Internal Affairs, who gave him advice about how to avoid punishment if his sexual misconduct was discovered. Plaintiff understood this to mean that Macleod would not be held accountable for his actions even if she did report his misconduct.

29. Defendant Macleod's abuse of plaintiff continued through at least May 3, 2017, after which she was finally assigned to a new counselor.

30. On information and belief, defendant Sexton was aware of Macleod's treatment of Ms. Doe since September 2016.

31. On or around August 4, 2017, defendant Sexton summoned Ms. Doe in for an interview about Macleod. Sexton told her that his request to interview her was based on information he received from an unknown source.

32. At first, Ms. Doe did not say anything because she was afraid of retaliation, but eventually Ms. Doe told him about Macleod's abuse.

33. After talking to Sexton, Ms. Doe was immediately, involuntarily transferred from Logan to Decatur Correctional Center.

34. Ms. Doe did not request to be transferred to Decatur Correctional Center and, in fact, she did not want to go Decatur Correctional Center.

35. After the transfer, Ms. Doe was unable to have her phone calls with her daughter for three weeks. Decatur was farther from other members of her family, thus they visited her less.

36. Whereas Ms. Doe had developed friendships and an emotional support system at Logan, she did not know anybody at Decatur.

37. Being removed from Logan also deprived Ms. Doe the opportunity to finish a cosmetology program in which she had been enrolled at Logan. Participating in this program had given her hope and greater employment opportunities for her future outside of Logan.

38. Being removed from Logan also caused Ms. Doe to lose a job she cherished on the Logan garden crew. This job taught her skills that she hoped she might use when she was released from prison.

39. On information and belief, Ms. Doe's transfer was directed and/or carried out by, among others, Defendants Sexton, defendant Warden Burke, and other as-yet-unidentified defendants, in retaliation for plaintiff's complaint about Macleod, and with the knowledge that it would be harmful to plaintiff.

40. On information and belief, defendant Macleod abused other women at Logan in the same way that he abused plaintiff. The Illinois State Police ("ISP") investigated Macleod's sexual assault of plaintiff. During that investigation, a number of other inmates described having sexual encounters with Macleod.

41. Upon information and belief, IDOC personnel at Logan, including Defendants and other as-of-yet unidentified IDOC officials, knew as early as February 2017 that Macleod was in fact engaging in this pattern of abuse, knew of a substantial likelihood that defendant Macleod was sexually abusing prisoners at Logan, and/or failed to take reasonable steps to prevent it from continuing. As a result of Defendants' indifference and failure to intervene, Ms. Doe's constitutional rights were violated.

42. As a result of the defendants' misconduct, Ms. Doe has suffered and continues to suffer severe emotional distress, including but not limited to humiliation, depression, rage, anxiety, panic attacks, insomnia, and post-traumatic stress.

## Count I
## 42 U.S.C. § 1983 – Eighth Amendment

43. Plaintiff repeats and re-alleges each paragraph of this complaint as if fully set forth in this count.

44. In the manner described more fully above, defendant Richard Macleod's conduct toward plaintiff violated her constitutional right to be free from cruel and unusual punishment.

45. Likewise, in the manner described more fully above, defendants Todd Sexton, Margaret Burke, Mike Atchison, Angela Locke, Kess Roberson, Christine Brannon, Patrick Keane, Felipe Zavala, Michael Funk, Alan Pasley, Clara Charron, Shari Klassen, Jennifer Meaker, Marcia Mibbs, Heidi Browne, Lisa Johnson, Debra Pollock, Melinda Eddy, Dr. Keena Peek, Grant Willis, Dr. Jennifer McClellan, Charles Gibbons, Bobbie LeDuc, Brent Blanco, and other as-yet-unidentified defendants, violated Ms. Doe's right to be free from cruel and unusual punishment because they knew that plaintiff's rights were being violated, had the realistic opportunity to intervene to prevent or stop the misconduct from occurring, and failed to do so. In the alternative,

7

these defendants were on notice of a substantial risk of harm to plaintiff and they consciously disregarded that risk.

46.     Although Logan and other IDOC facilities purportedly maintain a "zero tolerance" sexual assault policy, sexual assaults are widespread and not limited to Macleod's treatment of plaintiff. To the contrary, a large number of inmates at Logan and other IDOC facilities have been victims or sexual assault and harassment, including numerous reported instances of staff-on-inmate sexual assault and harassment.

47.     Across IDOC, the numbers are staggering. In 2014, there were over 275 *reported* allegations of sexual assault or harassment. Of those incidents, 57 related to staff-on-inmate sexual assault or harassment; IDOC admits that eight of those staff-on-inmate incidents occurred and another *40* were followed by investigations that were insufficient to develop the evidence needed to determine whether or not the incident occurred. In 2015, the number of *reported* allegations of sexual assault or harassment jumped to 404. Of those incidents, 118 related to staff-on-inmate sexual assault or harassment; IDOC admits that seven of those staff-on-inmate incidents occurred and another *72* were followed by investigations that were insufficient to develop the evidence needed to determine whether or not the allegation occurred. In 2016, there were over 1,000 *reported* allegations of sexual assault or harassment. Of those incidents, 453 related to staff-on-inmate sexual assault or harassment; IDOC admits that 11 of those staff-on-inmate incidents occurred and another *271* were followed by investigations that were insufficient to develop the evidence needed to determine whether or not the allegation occurred. In 2017, there were over 1,400 *reported* allegations of sexual assault or harassment. Of those incidents, almost 650 related to staff-on-inmate sexual assault or harassment; IDOC admits that 5 of those staff-on-inmate

incidents occurred and another *484* were followed by investigations that were insufficient to develop the evidence needed to determine whether or not the allegation occurred.

    48.    The sexual assault and harassment problem was pervasive at Logan in particular. In 2016, there were 145 *reported* allegations of sexual assault or harassment at Logan. Of those incidents, 91 related to inmate-on-inmate sexual abuse or harassment (by far the most at any IDOC facility referenced in the 2016 Annual PREA Report), and 54 related to staff-on-inmate sexual abuse or harassment (the second most at any IDOC facility contained in the 2016 Annual PREA Report). Of the 54 reported instances of staff-on-inmate sexual abuse or harassment, eleven were followed by investigations that were admittedly insufficient to develop the evidence needed to determine whether or not the allegation occurred. In 2017, there were 180 *reported* allegations of sexual assault or harassment at Logan. Of those incidents, 135 related to inmate-on-inmate sexual abuse or harassment (by far the most at any IDOC facility contained in the 2017 Annual PREA Report), and 45 related to staff-on-inmate sexual abuse or harassment (significantly more than over 20 other IDOC facilities contained in the 2017 Annual PREA Report). Of the 45 reported instances of staff-on-inmate sexual abuse or harassment, twelve were followed by investigations that were admittedly insufficient to develop the evidence needed to determine whether or not the allegation occurred.

    49.    In addition to the instances of sexual assaults reported in the PREA reports mentioned above, staff-on-inmate sexual assaults at Logan have been referred to the Illinois State Police ("ISP") for investigation. For example:

- ISP investigated a complaint that, in September 2015, Logan medical and corrections staff performed a forced cavity search on an inmate while she screamed "rape";

according to ISP records, the case was pending prosecution for criminal sexual assault and battery as of January 2016.

- ISP investigated a complaint that, in mid-2016, a Logan corrections staff member forced an inmate to have repeated sexual encounters under threat of harm to the inmate and her family; the corrections staff member *admitted* to having sexual encounters with the inmate, but defended his actions on the grounds that the encounters were consensual; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of November 2016.

- ISP investigated a series of complaints that, in mid-2017, a Logan correctional officer forced one or more inmates to have sexual encounters with him in exchange for pens, food, or the promise of future heroin; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of May 2018.

- ISP investigated a complaint that, in June 2017, a Logan corrections staff member forced himself on and had non-consensual sexual intercourse with an inmate; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of April 2018.

- ISP investigated a complaint that, between 2014 and May 2017, an inmate performed oral sex on a Logan staff member on approximately 20 different occasions; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of May 2018.

- ISP investigated numerous complaints that, between 2016 and 2017, a Logan corrections staff member sexually assaulted numerous inmates; according to ISP

records, the case was pending prosecution for custodial sexual misconduct as of November 2017.

- ISP investigated a complaint that, in mid-2018, an inmate had sexual encounters with two Logan corrections officers on numerous occasions; according to ISP records, the case was pending prosecution for aggravated criminal sexual assault in October 2018.

50. Staff-on-inmate sexual assaults at Logan have also generated a number of civil lawsuits. The assaults subject to such civil litigation include: (a) the December 2015 rape of an inmate by a corrections officer that is the subject of the *Farris v. Kohlrus* case pending in this Court; (b) the mid-2017 staff-on-inmate sexual assault that is the subject of the *Doe v. Ziemer* case pending in this Court.

51. Defendants Margaret Burke, Mike Atchison, Angela Locke, Kess Roberson, Christine Brannon, Patrick Keane, Felipe Zavala, Michael Funk, Alan Pasley, Clara Charron, Shari Klassen, Jennifer Meaker, Marcia Mibbs, Heidi Browne, Lisa Johnson, Debra Pollock, Melinda Eddy, Dr. Keena Peek, Grant Willis, Dr. Jennifer McClellan, Charles Gibbons, Bobbie LeDuc, Brent Blanco were on notice of numerous instances of sexual misconduct by staff directed at Logan inmates, were aware that a systemic sexual assault problem existed at Logan, and were further aware of the custom, policies, and practices at Logan that permitted this type of misconduct to flourish. Further, each of these defendants had both the duty and power to take steps to change these policies and procedures in a manner which would have reduced the danger that Plaintiff and other Logan inmates would be subjected to sexual misconduct at the hands of Logan staff. These Defendants had knowledge of the problem by way of, among other things, PREA Compliance Reports, John Howard Association Investigations and Reports, grievances, training, reports from counselors, meetings, and lawsuits.

52.     Defendants Margaret Burke, Mike Atchison, Angela Locke, Kess Roberson, Christine Brannon, Patrick Keane, Felipe Zavala, Michael Funk, Alan Pasley, Clara Charron, Shari Klassen, Jennifer Meaker, Marcia Mibbs, Heidi Browne, Lisa Johnson, Debra Pollock, Melinda Eddy, Dr. Keena Peek, Grant Willis, Dr. Jennifer McClellan, Charles Gibbons, Bobbie LeDuc, Brent Blanco knew that the the existence of this problem posed a substantial risk of harm to women prisoners like Plaintiff, yet they failed to take reasonable steps to mitigate the risk of harm—including those steps available to them pursuant to their supervisory positions and/or positions under the PREA statute—thereby exhibiting deliberate indifference.  Among other things, these Defendants failed to adequately investigate, supervise, control, and discipline IDOC employees who engaged in, or were accused of engaging in, staff-on-inmate assaults, thus directly encouraging and facilitating future abuses such as those affecting Plaintiff.  Such actions could have included (by way of example only): providing training to all staff at Logan Correctional Center on the unique challenges and requirements presented in dealing with women prisoners rather than the men prisoners who had previously been housed at Logan; providing a more rigorous and independent protocol for investigating allegations of sexual misconduct by staff; enforcing the zero tolerance rule which existed on paper (but was in fact not enforced) barring all sexual harassment and other misconduct by staff directed at prisoners, including zero tolerance of failures to report such misconduct; and on the job situational training and feedback by supervisors whenever they witnessed an instance of sexual misconduct or harassment by those they supervised.

53.     As a result of Defendants' misconduct, Plaintiff's rights were violated and she experienced injuries, including emotional distress.

54. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

55. As a result of the misconduct described in this count, plaintiff suffered harm.

### Count II
### 42 U.S.C. § 1983 - First Amendment Retaliation

56. Plaintiff repeats and realleges each paragraph of this compliant as if fully set forth in this count.

57. In the manner described more fully above, defendants Sexton, Burke, and other as-yet-unidentified defendants retaliated against Ms. Doe for engaging in protected First Amendment activity when she reported Macleod's misconduct.

58. The misconduct described in this count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

59. As a result of the defendants' retaliatory actions, plaintiff suffered harm.

WHEREFORE, plaintiff Jane Doe prays that this Court enter judgment in her favor and against the defendants, awarding compensatory damages, costs and attorneys' fees, and punitive damages against each of the defendants in their individual capacities, and for such further additional relief as this court may deem appropriate and just.

**JURY DEMAND**

Plaintiff demands trial by jury.

                                    Respectfully submitted,

                                    **JANE DOE**

                                    By: /s/ *Nicholas F. Wasdin*

                                    Scott W. Fowkes, P.C.
                                    Nicholas F. Wasdin
                                    Christina E. Sharkey
                                    Shannon L. Gonyou
                                    KIRKLAND & ELLIS LLP
                                    300 North LaSalle
                                    Chicago, IL 60654
                                    Telephone: (312) 862-2000
                                    Facsimile: (312) 862-2200

                                    Nicole Schult
                                    Alan Mills
                                    Elizabeth Mazur
                                    UPTOWN PEOPLE'S LAW CENTER
                                    4413 N. Sheridan
                                    Chicago, IL 60640
                                    Telephone: (773) 769-1411
                                    Facsimile: (773) 769-2224

                                    *Attorneys for Plaintiff*