**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Jane Doe, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:18-cv-03191-SEM-TSH |
| v. | ) | |
| | ) | |
| Richard Macleod, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE ILLINOIS**
**DEPARTMENT OF CORRECTIONS' OBJECTIONS TO THE**
**MAGISTRATE JUDGE'S MAY 15, 2019 ORDER**

Plaintiff is a former female prison inmate who was repeatedly sexually assaulted by her male counselor at Logan Correctional Center ("Logan"). Plaintiff's treatment was not isolated. Rather, a widespread pattern of staff-on-inmate sexual assaults at Logan has been reported by numerous female inmates and corroborated during investigations by state law enforcement agencies. Plaintiff now asserts claims under 42 U.S.C. § 1983 against the individuals responsible for her mistreatment.

Many of the documents relevant to Plaintiff's claims are in the possession of the Illinois Department of Corrections ("IDOC"). Thus, on January 11, 2019, Plaintiff served a subpoena on IDOC seeking records related to, among other things, Plaintiff's and other staff-on-inmate sexual assaults at Logan. (*See* Ex. A, IDOC Subpoena.) IDOC produced certain information related to *Plaintiff's* sexual assault, but objected to producing materials related to *other* staff-on-inmate sexual assaults on various grounds. (*See* Ex. B, IDOC Subpoena Resp., at No. 13.)

On May 15, 2019, Magistrate Judge Schanzle-Haskins compelled IDOC to produce a subset of the requested materials. He held that documents regarding staff-on-inmate sexual assaults "may be relevant to show the risk of harm to inmates at Logan, including [Plaintiff], from

Sexual Misconduct and [Defendants'] knowledge of such risk of harm."  (Dkt. No. 36 at 8.)
However, recognizing IDOC's concerns regarding production burden, relevant time frame, and
third party privacy, he: (i) limited the types of materials to be produced; (ii) limited the production
time period; and (iii) directed the parties to enter a HIPAA-qualified protective order to protect
third party medical information.  (*Id.* at 9–11.)  Subject to those limitations and protections, IDOC
was ordered to produce written complaints and investigatory files related to staff-on-inmate sexual
misconduct from March 1, 2015 to July 31, 2018.  (*Id.* at 9–10.)

IDOC now asks this Court to second-guess that decision.  But Rule 72 is not a mechanism
for challenging every discovery order.  Rather, a district court will modify an order under Rule 72
only when it is "clearly erroneous or is contrary to law."  FED. R. CIV. P. 72(a).  This is an
extraordinarily high bar, under which "the district court can overturn the magistrate judge's ruling
only if [it] is left with the definite and firm conviction that a mistake has been made."  *Weeks v.
Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).  IDOC's objection—which cites
no relevant legal authority—falls far short of making that showing here.

***First***, IDOC's personal privacy objection to producing information regarding non-party
sexual assaults is without merit.  Putting aside that this objection was not included in IDOC's
subpoena response, and was therefore waived, Magistrate Judge Schanzle-Haskins directed the
parties to enter a HIPAA-qualified protective order prior to IDOC's production.  That protective
order—which IDOC's counsel ***agreed to*** and specifically edited to provide protection for the non-
party information at issue—was entered on June 4, 2019.  (Dkt. No. 40.)  IDOC does not and
cannot cite authority supporting the proposition that production of third party medical information
subject to such a protective order is in any way erroneous, let alone "clearly erroneous" or
"contrary to law."

**Second**, IDOC argues that the production time period is too broad because it includes complaints of sexual assaults that pre- and post-date Plaintiff's time at Logan. Again, IDOC cites no authority for that proposition. Nor could it. Rule 26—which governs the scope of discovery— "gives expansive power to discover information 'regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Grayson v. City of Aurora*, No. 1:13-cv-01705, 2013 WL 6697769, at *2 (N.D. Ill. Dec. 19, 2013) (citation omitted). Evidence of sexual assaults pre-dating Plaintiff's incarceration goes to, among other things, Defendants' notice of the problem and deliberate indifference to Plaintiff's well-being. Evidence that Defendants continued to turn a blind eye to the problem even after Plaintiff (and many other inmates) reported being assaulted goes to, among other things, their liability for punitive damages.

**Third**, IDOC argues that searching its own records to identify written complaints of staff-on-inmate sexual assaults would be "nearly, if not altogether, impossible." This incredible assertion fails for two reasons. One, IDOC is statutorily required to collect, review and maintain this exact information under the Prison Rape Elimination Act ("PREA"). Thus, IDOC not only must have a method for identifying the written complaints at issue, but should have **already** done so. Two, even taking IDOC's burden assertion at face value, courts have squarely rejected burden arguments based on the manner in which the producing party chooses to store its own records. *E.g.*, *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *4 (N.D. Ill. Sept. 24, 2013) (granting motion to compel over undue burden objection because "[a]t bottom, [the] explanation as to why plaintiff is not entitled to discovery is that [the producing party] created a data storage system that is immune from discovery," which, "[i]f accepted, … would create the perverse incentive of encouraging companies to organize their systems and records in a way that make the information contained in them inaccessible except at great burden and cost.").

3

## I.     BACKGROUND

### A.     Plaintiff's And Other Sexual Assaults At Logan.

Plaintiff was an IDOC inmate from March 2015 to July 2018.  Plaintiff was housed at Logan in particular from March 2015 to August 2017, during which time she was one of numerous female inmates who was sexually assaulted by male corrections staff. (Dkt. No. 1 ¶¶ 37–38.; *see also e.g.*, Ex. C, Illinois State Police Investigative Summaries, at ISP 00001–ISP 00027.) Plaintiff's assault in particular was committed by a male corrections "counselor" named Richard Macleod.  (Dkt. No. 1 ¶¶ 15–21; Ex. C at ISP 00021–ISP 00026.)  Macleod exposed himself to Plaintiff, made sexual comments to her (including while she was on the phone with her daughter), and had non-consensual sexual intercourse with her. (*E.g.*, Dkt. No. 1 ¶¶ 15–21.)  Macleod threatened Plaintiff that, if she ever reported his conduct, supervisory IDOC personnel would protect him and punish her.  (*Id.* ¶¶ 24–25.)  Sure enough, immediately after she reported her assault, Logan supervisors punished Plaintiff by involuntarily transferring her to a distant prison facility.  (*Id.* ¶¶ 28–30.)

Macleod was a known problem at Logan.  There is evidence that he assaulted other Logan inmates.  (Ex. C at ISP 00021–ISP 00026.)  His supervisor reported to the Illinois State Police ("ISP") that he had a history of bullying and sexually harassing other corrections staff (*e.g.*, by telling female corrections staff that "every time I see you I get a hard on"). (Ex. D, ISP Investigatory File, at 2.)   Additionally, his supervisor reported that she had (i) been contacted by an external lawyer who told her that Macleod allowed inmates to make phone calls in exchange for sex, and (ii) received reports from corrections staff that Macleod had been seen with an inmate in a suspicious location.  (*Id.*)  When told that Macleod was alleged to have had sex with inmates in her office, the supervisor stated, "I would not doubt it."  (*Id.* at 3.)

Macleod was operating within a larger culture of sexual assault at Logan, in which inmates regularly reported being assaulted by corrections staff.   In 2016, there were 145 *reported* allegations of sexual assault or harassment at Logan.  (Ex. E, 2016 PREA Report.)  Of those incidents, 54 related to staff-on-inmate sexual abuse or harassment (the second most at any IDOC facility contained in the 2016 Annual PREA Report).  (*Id.*)  Similarly, in 2017, there were 180 *reported* allegations of sexual assault or harassment at Logan.  (Ex. F, 2017 PREA Report.)  Of those incidents, 45 related to staff-on-inmate sexual abuse or harassment (significantly more than over 20 other IDOC facilities contained in the 2017 Annual PREA Report).  (*Id.*)

Some staff-on-inmate sexual assaults at Logan were referred to ISP for investigation.  For example:

- ISP investigated a complaint that, in September 2015, Logan medical and corrections staff performed a forced cavity search on an inmate while she screamed "rape"; according to ISP records, the case was pending prosecution for criminal sexual assault and battery as of January 2016.  (Ex. C at ISP 00001–ISP 00003.)

- ISP investigated a complaint that, in mid-2016, a Logan corrections staff member forced an inmate to have repeated sexual encounters under threat of harm to the inmate and her family; the corrections staff member *admitted* to having sexual encounters with the inmate, but defended his actions on the grounds that the encounters were consensual; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of November 2016.  (Ex. C at ISP 00005–ISP 00006.)

- ISP investigated a series of complaints that, in mid-2017, a Logan correctional officer forced one or more inmates to have sexual encounters with him in exchange for pens, food, or the promise of future heroin; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of May 2018.  (Ex. C at ISP 00007–ISP 00012.)

- ISP investigated a complaint that, in June 2017, a Logan corrections staff member forced himself on and had non-consensual sexual intercourse with an inmate; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of April 2018. (Ex. C at ISP 00013.)

- ISP investigated a complaint that, between 2014 and May 2017, an inmate performed oral sex on a Logan staff member on approximately 20 different occasions; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of May 2018. (Ex. C at ISP 00014.)

- ISP investigated numerous complaints that, between 2016 and 2017, a Logan corrections staff member sexually assaulted numerous inmates; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of November 2017.  (Ex. C at ISP 00015–ISP 00020.)

- ISP investigated a complaint that, in mid-2018, an inmate had sexual encounters with two Logan corrections officers on numerous occasions; according to ISP records, the case was pending prosecution for aggravated criminal sexual assault in October 2018.  (Ex. C at ISP 00027.)

Additionally, staff-on-inmate sexual assaults at Logan have generated a number of other civil lawsuits.  The assaults subject to such civil litigation include the December 2015 rape of an inmate by a corrections officer that is the subject of *Farris v. Kohlrus*, Case No. 17-cv-3279 (C.D. Ill.).  They also include the mid-2017 staff-on-inmate sexual assault that is the subject of *Doe v. Ziemer*, Case No. 18-cv-3234 (C.D. Ill.).

### B.      Plaintiff's Claims.

On August 2, 2018, Plaintiff filed her complaint pursuant to 42 U.S.C. § 1983 for violation of the Eighth and First Amendments. (Dkt. No. 1 ¶¶ 40–48.)  In her initial complaint, Plaintiff asserted a claim against Macleod based on her sexual assault.  She also asserted claims against former warden Margaret Burke and supervisory officer Todd Sexton because they knew of the problem and failed to intervene and retaliated against Plaintiff by transferring her to a different prison facility after she reported being assaulted.  (*Id.* ¶¶ 40–48.)  After discovering additional information regarding the scope of the sexual assault problem, Plaintiff recently amended her complaint to assert similar claims against 22 additional defendants who had various supervisory, reporting and/or policy-making responsibility at Logan.  (Dkt. No. 37 ¶¶ 6–9.)

### C.      Plaintiff's Subpoena To IDOC And IDOC's Response.

Many of the documents relevant to Plaintiff's claims are in IDOC's possession.  Thus, on January 11, 2019, Plaintiff served a subpoena on IDOC seeking records related to, among other things, Plaintiff's and other staff-on-inmate sexual assaults at Logan.  (*See* Ex. A.)  IDOC produced

certain information related to *Plaintiff's* sexual assault, but objected to producing materials related to *other* staff-on-inmate sexual assaults at Logan—which are responsive to Request No. 13—on various grounds.  (*See* Ex. B at No. 13.)  IDOC's response does not assert that production of the requested information would violate the privacy rights of any third party.  (*Id.*)

### D.     Plaintiff's Motion To Compel.

On March 26, 2019, Plaintiff filed a motion to compel IDOC to produce the withheld materials.  (Dkt. No. 25-1.)   In her motion, Plaintiff argued that the materials were relevant to show, among other things, that Defendants (i) knew or should have known of the problem, (ii) failed to enforce anti-assault policies or otherwise adequately respond, (iii) tolerated a widespread culture of sexual assault, and (iv) thereby created the toxic atmosphere that allowed Plaintiff's assault to occur.  (Dkt. No. 25-1 at 2.)  In a thoughtful, twelve-page opinion issued on May 15, 2019, Magistrate Judge Shanzle-Haskins largely agreed, explaining that:

> Documents regarding other sexual contact, sexual misconduct, and sexual assaults by Logan employees against Logan inmates (collectively Sexual Misconduct) are relevant to the claims against Defendants Burke and Sexton. Doe alleges that Sexton and Burke intentionally or recklessly allowed a substantial risk of harm to exist that inmates such as Doe would be subjected to Sexual Misconduct. Information about other Sexual Misconduct committed by Logan personnel against Logan inmates may be relevant to show the risk of harm to inmates at Logan, including Doe, from Sexual Misconduct and Sexton or Burke's knowledge of such risk of harm.

Magistrate Judge Schanzle-Haskins, however, imposed various restrictions on IDOC's production obligations to address IDOC's concerns regarding third party privacy, relevant time period, and undue burden. Specifically, he: (i) directed the parties to agree to a HIPAA compliant protective order to protect the information from disclosure; (ii) limited the production time frame from March 1, 2015 to July 31, 2018, which, he said, minimizes the burden on IDOC while still providing "sufficient information to establish the extent of the risk to inmates and the extent of Burke and Sexton's knowledge of such risk"; and (iii) limited the type of documents to be produced to written

complaints and investigatory files, so that IDOC "will not be put to the burdensome task of scouring every text and social media posting related to every inmate and employee." (Dkt. No. 36 at 9–11.)  With those protections and limitations in place, Magistrate Judge Schanzle-Haskins ordered IDOC to produce:

> (1) written complaints submitted to Department employees alleging Sexual Misconduct (Written Complaints); (2) Department investigatory files of Written Complaints; and (3) all other Department investigatory files or logs of allegations of Sexual Misconduct in addition to the allegations set forth in Written Complaints [for the time period March 1, 2015 to July 31, 2018].

(Dkt. No. 36 at 9–10.)

### E.   IDOC's Rule 72 Objections.

On May 29, 2019, IDOC filed a Rule 72 objection in this Court.  (Dkt. No. 38.)  IDOC's objection asserts three purported errors with Magistrate Judge Shanzle-Haskins' order—third party privacy, relevant time frame, and undue burden.  (*Id.*)[1]  IDOC's argument in support of its objection contains no citations to relevant legal authority.  (*Id.*)

## II.   ARGUMENT

To prevail on its objections, IDOC must show that Magistrate Judge Schanzle-Haskins' order was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). This is an extraordinarily high bar.  Indeed, "[t]o be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the

---

[1]   IDOC's Rule 72 objection abandons the broader relevance argument it raised during the motion to compel briefing, and thus IDOC no longer contests that information regarding other sexual assaults is relevant to Plaintiff's claims.  *See e.g.*, *Keith v. Koerner*, 843 F.3d 833, 843–46 (10th Cir. 2016) (prison warden individually liable where the evidence showed, among other things, that the prison (i) "fac[ed] a high[] number of allegations of sexual misconduct," (ii) did not "seriously investigate[]" the allegations, (iii) routinely accepted a staff members' denial over an inmate's allegation, and (iv) "failed to impose meaningful discipline" when "a claim of sexual misconduct was supported by corroborating evidence.").

force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988); *see also Sommerfield v. City of Chicago*, No. 06 C 3132, 2010 WL 780390, at *2 (N.D. Ill. Mar. 3, 2010) ("The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.") (citing *Weeks*, 126 F.3d at 943).  In light of this standard, "it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions."  12 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3069, at 350–51 (2d ed. 1997).

Here, all of the issues raised in IDOC's objection are common in discovery, and all are within the broad discretion of the judge tasked with managing discovery in a particular matter. Magistrate Judge Schanzle-Haskins' twelve page opinion considered and addressed these issues in a manner that was reasonable and well-within the bounds of that discretion, including by (1) directing the parties to enter a confidentiality order to protect third party privacy, (2) identifying a time period that balanced IDOC's burden against Plaintiff's need for relevant information, and (3) limiting the scope of production to a limited number of categories of reasonably accessible documents.  IDOC may disagree with that ruling, but it has not shown that it is in ***any way*** erroneous, let alone that it is "clearly erroneous" or "contrary to law" under Rule 72's demanding standard.

### A.    IDOC's Personal Privacy Objection Is Without Merit.

IDOC argues that it should not be required to produce "medical information, mental health information, and confidential PREA information of non-party offenders who did not consent to the disclosure of their private and protected information."  (Dkt. No. 38 at 3.)  As an initial matter, IDOC did not assert this objection in its response to Plaintiff's subpoena.  (Ex. B at No. 13.)  Thus, IDOC waived this objection and should not be allowed to assert it here.  *See Whitlow v. Martin*,

263 F.R.D. 507, 510 (C.D. Ill. 2009) (finding a party's objection waived when it was not raised in timely objections within 14 days of service of the subpoena).

In any event, IDOC's objection fails because Magistrate Judge Schanzle-Haskins directed the parties to enter a HIPAA-qualified protective order prior to IDOC's production.   Under HIPAA's enabling regulations, a "covered entity" like IDOC or Logan "may use or disclose protected health information without the written authorization of the individual" or "the opportunity for the individual to agree or object" in "response to a subpoena, discovery request, or other lawful process." 45 C.F.R. §§ 164.512, 164.512(e)(1)(ii).   In such a situation, the covered entity may disclose protected information if the requesting party has secured "a qualified protective order."   *Id.* at §§ 164.512(e)(1)(ii)(A) and (B).   A "qualified protective order" is one that prohibits the parties from using or disclosing protected health information for any purpose other than the litigation, and requires the return to the covered entity or destruction of the protected health information at the end of the litigation.   *Id.* at §§ 164.512(e)(1)(v)(A) and (B).

Such a protective order was entered in this case on June 4, 2019.  (Dkt. No. 40.)  It prohibits the use or disclosure of any confidential information—including "medical or mental health information concerning ***any individual***"—for "any purpose whatsoever other than in this litigation," and requires that confidential information be returned to the producing party at the end of the litigation.  (*Id.* ¶¶ 2, 5(a), 14(b) (emphasis added).)  In addition to protecting third-party medical and mental health records, IDOC's counsel specifically edited the order to provide the same level of protection for the sexual assault records at issue here, including by adding the following language to the definition of Confidential Information:

> (h) information and documentation related to allegations of sexual contact, sexual misconduct, and sexual assaults; (i) information and documentation gathered, created, or maintained pursuant to the Prison Rape Elimination Act or any report of sexual contact, sexual misconduct, or sexual assault; (j) information or documents

gathered, created, or maintained pursuant to the Prison Rape Elimination Act or as
a result of any allegations of sexual contact, sexual misconduct, or sexual assault .
. . .

(*Id.* ¶ 2.)  IDOC cites no authority for its argument that production of the at-issue materials subject

to a HIPAA-qualified protective order is in any way erroneous—let alone "clearly erroneous" or

"contrary to law"—and thus its objection on third-party privacy grounds must be overruled.  *See*

*Biggers v. Green Acres Health Servs., Inc.*, No. 5:14-CV-10, 2014 WL 6460705, at \*2 (W.D. Ky.

Nov. 17, 2014) ("While this court is sensitive to the privacy interests implicated in the subpoena

of third party medical records, the agreed protective order in place adequately protects the [third

party's] privacy interests."); *Allen v. Woodford*, No. CV-F-05-1104 OWW LJO, 2007 WL 309485,

at \*5 (E.D. Cal. Jan. 30, 2007) (finding a protective order that prohibited the parties from using

protected health information for any purpose other than the litigation and required the return of

protected material at the conclusion of litigation to be adequate under HIPAA to protect third party

medical records); *see also In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621 (7th Cir.

2000) (finding plaintiffs entitled to production subject to protective order or other limitations

imposed by the district court).

## B.    IDOC's Objection To The Time Frame Determined By The Magistrate Judge Fails.

Balancing Plaintiff's need for discovery against any potential burden to IDOC, Magistrate

Judge Schanzle-Haskins limited IDOC's production obligation to the time period of March 1,

2015, to July 31, 2018.  (Dkt. No. 36 at 9–10.)  IDOC disagrees with that ruling, and asks this

Court to change "th[e] timeframe . . . [for] production . . . [to] between March 13, 2015, and August

4, 2017" because Plaintiff "was not housed at Logan Correctional Center prior to March 13, 2015,

or after August 4, 2017," and thus, according to IDOC, "allegations of Sexual Misconduct arising

11

at Logan [] before March 13, 2015, or after August 4, 2017, are irrelevant to the claims in this case." (Dkt. No. 38 at 4.)  This objection is without merit.

The scope of discovery is governed by Rule 26, which "gives expansive power to discover information 'regarding any nonprivileged matter that is relevant to any party's claim or defense." *Grayson*, 2013 WL 6697769, at *2 (citation omitted).  One of Plaintiff's theories in this case is that, after its transition from a male to a female facility in 2013, Logan supervisors failed to re-train corrections staff and enforce anti-assault policies, and thereby fostered a culture of staff-on-inmate sexual assault.  Plaintiff intends to prove at trial that Defendants turned a blind eye to this problem prior to, during, and after her time at Logan.  The documents IDOC was ordered to produce are relevant to that theory and are well within the broad scope of Rule 26.

For example, reports of sexual assaults *pre*-dating Plaintiff's incarceration go to, among other things, Defendants' notice of the sexual assault problem and deliberate indifference to Plaintiff's well-being.  This would be true of sexual assaults dating back to 2013, when Logan was first converted to a female facility, but is particularly true for the far narrower time period subject to Magistrate Judge Schanzle-Haskins' order—limited to only ***two weeks*** prior to the start of Plaintiff's incarceration.  To the extent other inmates reported sexual assaults during the two weeks prior to Plaintiff's arrival at Logan, then that evidence will show that Defendants knew or should have known of the problem at the very heart of the relevant time period.  IDOC's unsupported assertions to the contrary are without merit.  *See Keith*, 843 F.3d at 847 (noting that sexual assault "Audit Report" stating that "[f]acility officials should have recognized certain red flags and acted on them" was sufficient to survive summary judgment on claim against warden).

Similarly, reports of sexual assaults *post*-dating Plaintiff's incarceration are relevant to show, among other things, Defendants' liability for punitive damages.  Immediately after Plaintiff

reported her sexual assault in August 2017, Logan supervisors retaliated against her by transferring her to another prison.  To the extent that Defendants thereafter *continued* to turn a blind eye toward staff-on-inmate sexual assaults at Logan, then that would support that they acted with reckless and callous disregard of Plaintiff's rights and are liable for punitive damages.  *See Smith v. Wade*, 461 U.S. 30, 51 (1983) (describing punitive damages in Section 1983 case).

### C.     IDOC's "Undue Burden" Objection Is Without Merit.

IDOC also objects to producing "written complaints" of staff-on-inmate sexual assaults on undue burden grounds.  (Dkt. No. 38 at 4–5.)  According to IDOC, such a production would require it to "review every grievance filed by every offender to discern whether any of them made mention of Sexual Misconduct," which would be "nearly, if not altogether, impossible."  (*Id.* at 5.)  This objection fails for two reasons.

First, IDOC is *required* under PREA to collect, review and retain this exact information.  Among other things, PREA requires IDOC to (i) "collect accurate, uniform data for every allegation of sexual abuse at facilities under its direct control," (ii) "maintain, review, and collect data as needed from all available incident-based documents, including reports, investigation files, and sexual abuse incident reviews," and (iii) "maintain sexual abuse data collected pursuant to [PREA] for at least 10 years after the date of the initial collection."  28 CFR §§ 115.87(a) and (d), 115.89(d).  Given that IDOC is statutorily obligated to collect, review and retain inmate reports of sexual assaults at Logan, and issues annual reports aggregating that very data, it is impossible to credit its assertion that identifying those same complaints for production in this case would be "nearly, if not altogether, impossible."  (Dkt. No. 38 at 5.)

District courts in the Seventh Circuit have rejected similar hyperbole.  For example, in *Caldwell v. Snyders*, a jail argued that it had no non-burdensome method to search for relevant inmate assault reports.  *See* Ex. G, Motion to Compel Transcript, *Caldwell v. Snyders*, No. 16 C

50015 (N.D. Ill. Aug. 9, 2016).  The district court rejected that argument and addressed the jail's counsel as follows:

> Are you telling me that the Stephenson County Jail told you to tell a federal judge who litigated and practiced in the field of civil rights litigation for 23 years that inmate-on-inmate reports and inmate-on-staff reports are not segregated in some kind of manner at an accredited jail? … Because they're not being honest with you. If that's what they're telling you, they're not being honest with you. If Stephenson County Jail got a FOIA … saying tell us -- you know, give us the numbers or reports on inmate-on-staff assaults, they would have to go through every single one? It's just -- it's incredible. What good would the reports be if you couldn't find them? How could -- I mean, the whole purpose of keeping records and having records for management purposes is so that you can manage. That makes zero sense. Zero. If you brought somebody in and put them on the witness stand, I would have cross-examined them to see what they had to say. Makes zero sense. Never in my entire career have I ever seen anything like that or heard anything like that. …

(*Id.* at 8–9.)  IDOC's assertion here fails for similar reasons.  IDOC is obligated under PREA to collect and review inmate reports of sexual assaults.  It cannot satisfy that obligation absent some method of identifying and reviewing those records.  Thus, like the jail's assertion in *Caldwell*, IDOC's argument that it would be "nearly, if not altogether, impossible" to locate those same records here "makes zero sense."[2]

Second, even taking IDOC's burden claims at face value, courts in this district have repeatedly held that storing records in such a way that makes review and retrieval difficult is not a defense to producing those materials in discovery.  For example, in *Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, the defendant contended that, "due to the manner in which [it] stores electronic data," "it would have to manually sift through information from about several hundred thousand customers to identify [relevant information]," which "would impose an undue burden, as it would take 'thousands

---

[2]   What good are the records if they disappear into inmate "master files" and can never be recovered as IDOC contends? (Dkt. No. 38 at 5.)  How can IDOC manage its facilities absent some method of reviewing critical information like the number and nature of reported staff-on-inmate sexual assaults?

upon thousands of hours' to accomplish."  No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013).  The court squarely rejected that argument because "[a]t bottom, [the] explanation as to why plaintiff is not entitled to discovery is that [the producing party] created a data storage system that is immune from discovery," which "[i]f accepted, that explanation would create the perverse incentive of encouraging companies to organize their systems and records in a way that make the information contained in them inaccessible except at great burden and cost."  *Id.*; *see also* Ex. G at 10 (rejecting undue burden argument because: "Having a terrible record system is not a defense to a discovery request. If it were, every entity and large body, government, hospital, they'd make it absolutely impossible to find documents, and they'd say we can't do it. It's burdensome and that.").  IDOC's burden argument here fails for the same reason.  If IDOC chooses to store complaints of staff-on-inmate sexual assaults in such a way that it cannot later locate them without burden, "that is a problem of [its] own making by the way in which it chooses to maintain its records. It is not a basis to deny plaintiff relevant discovery."  *Whiteamire Clinic,* 2013 WL 5348377, at *6.

## III.   CONCLUSION

For all of these reasons, Plaintiff respectfully requests that the Court overrule IDOC's Rule 72 objections and sustain Magistrate Judge Tom Schanzle-Haskins' May 15, 2019 Order.

Dated:  June 12, 2019                          Respectfully submitted,

                                               /s/ *Cassandra M. Burns*
                                               Scott W. Fowkes, P.C.
                                               Nicholas F. Wasdin
                                               Christina E. Sharkey
                                               Shannon L. Gonyou
                                               Cassandra M. Burns
                                               KIRKLAND & ELLIS LLP
                                               300 North LaSalle
                                               Chicago, IL 60654
                                               Telephone: (312) 862-2000
                                               Facsimile: (312) 862-2200

                                               Alan Mills
                                               Elizabeth Mazur
                                               Nicole Schult
                                               UPTOWN PEOPLE'S LAW CENTER
                                               4413 North Sheridan Road
                                               Chicago, IL 60640
                                               Telephone: (773) 769-1411
                                               Facsimile: (773) 769-2224

                                               *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

This is to certify that on June 12, 2019, a true and correct copy of the foregoing was electronically filed and served upon counsel of record via the Court's CM/ECF system.

Respectfully submitted,

/s/ *Cassandra M. Burns*
Cassandra M. Burns
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200