## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jane Doe, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:18-cv-03191-SEM-TSH |
| | ) | |
| v. | ) | |
| | ) | |
| Richard Macleod, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL BURKE AND SEXTON TO PRODUCE INFORMATION AND MATERIAL RESPONSIVE TO PLAINTIFF'S FIRST SETS OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Plaintiff is a former female prison inmate who was repeatedly sexually assaulted by her male counselor at Logan Correctional Center ("Logan").  Plaintiff served her first set of discovery on Defendants Margaret Burke and Todd Sexton ("Defendants") on February 4, 2019.  Now—almost five months after Plaintiff's request, and two months after Defendants finally responded—Defendants are refusing to produce certain information regarding *other* sexual assaults at Logan.  Defendants' position is contrary to both Rule 26 and this Court's recent order compelling IDOC to produce materially similar information.  The information subject to this motion falls into two buckets.

*Interrogatories*.  Plaintiff served two interrogatories seeking information regarding (i) Defendants' knowledge of actual or reported instances of staff-on-inmate sexual assaults at Logan; and (ii) Defendants' participation in meetings or other communications regarding staff-on-inmate sexual assaults at Logan.  Defendants objected to providing this information on relevance and burden grounds.  These objections lack merit.  *First*, as the Court recently held (Dkt. No. 36 at 8), Defendants' notice of staff-on-inmate sexual assaults at Logan is relevant to Plaintiff's claims,

including because it shows Defendants were aware of a risk to Plaintiff and other inmates, failed to take action in response to that risk, and thus acted with deliberate indifference to Plaintiff's well-being.  *Second*, contrary to Defendants assertions, there is almost ***no*** burden—let alone an "undue burden" sufficient to deny Plaintiff relevant discovery—in drafting answers to basic interrogatories regarding their knowledge of, and participation in discussing, the sexual assault problem at Logan.

*Request for Production.*  Plaintiff also requested that Defendants produce the documents they previously produced in related cases involving staff-on-inmate sexual assaults at Logan, including in particular the *Doe v. Ziemer* case currently pending before this Court (No. 18-cv-3234), which relates to a staff-on-inmate sexual assault that occurred around the same time as Plaintiff's.  Defendants objected to producing this material on relevance and "cloned discovery" grounds.  These objections are without merit, too.  *First*, Defendants' relevance objections fail for the reasons discussed above: information regarding other sexual assaults at Logan goes to, among other things, Defendants' notice of the sexual assault problem, widespread failure to enforce anti-assault policies, and deliberate indifference to Plaintiff's well-being.  *Second*, contrary to Defendants' assertions, courts allow "cloned discovery" where, as here, the same documents are relevant to two or more cases.  *See Peterson v. Wright Med. Tech., Inc.*, No. 11-1330, 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013)  ("In this case, the 'cloned' discovery seeks information that is relevant to plaintiff's claims and defendants' defenses and that it is reasonably calculated to lead to the discovery of admissible evidence on the questions of what Wright knew and when Wright learned what it knew about the defect alleged in the complaint and the failure that allegedly resulted from that defect.").

Seeking to avoid another motion to compel, Plaintiff identified these deficiencies in a letter to Defendants dated May 17, 2019 (three weeks after Defendants finally responded to Plaintiff's

requests).  That letter requested to schedule a meet and confer to discuss these issues no later than May 24, 2019.  Defendants ignored Plaintiff's letter for weeks, and declined to meet and confer telephonically on these issues until June 24, 2019 (*i.e.*, yesterday).  At that time, Defendants stated they would stand on their objections to producing the above-referenced material.  Thus, Plaintiff respectfully requests that the Court overrule those objections and order Defendants to respond to the at-issue discovery requests.

## BACKGROUND

### A.    Plaintiff's And Other Sexual Assaults At Logan.

Plaintiff, Jane Doe, brings this lawsuit pursuant to 42 U.S.C. § 1983 for violation of the Eighth and First Amendments of the U.S. Constitution.  (Dkt. No. 1 ¶¶ 40–48.)   Plaintiff was a prisoner at Logan from March 2015 to July 2018.  (*Id.* ¶ 8.)  During that time period, Plaintiff was one of numerous female inmates who were sexually assaulted by male corrections personnel.  (*Id.* ¶¶ 37–38; *see also e.g.*, Ex. A, Illinois State Police Investigative Summaries, at *e.g.*, ISP 00001– ISP 00027.)   Plaintiff in particular was assaulted by a Corrections Counselor named Richard Macleod.  (*E.g.*, Dkt. No. 1 ¶¶ 15–21.)   Macleod exposed himself to Plaintiff, made sexual comments to her (including while she was on the phone with her daughter), and had non-consensual sexual intercourse with her.  (*Id.*)  Macleod threatened Plaintiff that, if she ever reported his conduct, supervisory IDOC personnel would protect him and punish her.  (*Id.* ¶¶ 24–25.)  Sure enough, immediately after she reported her assault, Defendants Burke and Sexton punished Plaintiff by involuntarily transferring her to a distant prison facility.  (*Id.* ¶¶ 28–30.)

Macleod was a known problem at Logan.  There is evidence that he assaulted numerous Logan inmates.  (Ex. A at ISP 00021–ISP 00026.)  His supervisor reported to the Illinois State Police ("ISP") that he had a history of bullying and sexually harassing other corrections staff (*e.g.*, by telling female corrections staff that "every time I see you I get a hard on").  (Ex. B, ISP

Investigatory File, at 3.)  Additionally, his supervisor reported that she had (i) been contacted by an external lawyer who told her that Macleod allowed inmates to make phone calls in exchange for sex, and (ii) received reports from corrections staff that Macleod had been seen with an inmate in a suspicious location.  (*Id.*)  When told that Macleod was alleged to have had sex with inmates in her office, the supervisor stated, "I would not doubt it."  (*Id.* at 4.)

Macleod was operating within a larger culture of sexual assault at Logan, in which inmates regularly reporting being assaulted by corrections staff.  In 2016, there were 145 *reported* allegations of sexual assault or harassment at Logan.  (Ex. C, 2016 PREA Report.)  Of those incidents, 54 related to staff-on-inmate sexual abuse or harassment (the second most at any IDOC facility contained in the 2016 Annual PREA Report).  (*Id.*)  Similarly, in 2017, there were 180 *reported* allegations of sexual assault or harassment at Logan.  (Ex. D, 2017 PREA Report.)  Of those incidents, 45 related to staff-on-inmate sexual abuse or harassment (significantly more than over 20 other IDOC facilities contained in the 2017 Annual PREA Report). (*Id.*)

Some staff-on-inmate sexual assaults at Logan were referred to ISP for investigation.  For example:

- ISP investigated a complaint that, in September 2015, Logan medical and corrections staff performed a forced cavity search on an inmate while she screamed "rape"; according to ISP records, the case was pending prosecution for criminal sexual assault and battery as of January 2016.  (Ex. A at ISP 00001–00003.)

- ISP investigated a complaint that, in mid-2016, a Logan corrections staff member forced an inmate to have repeated sexual encounters under threat of harm to the inmate and her family; the corrections staff member *admitted* to having sexual encounters with the inmate, but defended his actions on the grounds that the encounters were consensual; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of November 2016.  (*Id.* at ISP 00005–00006.)

- ISP investigated a series of complaints that, in mid-2017, a Logan correctional officer forced one or more inmates to have sexual encounters with him in exchange for pens, food, or the promise of future heroin; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of May 2018. (*Id.* at ISP 00007–00012.)

- ISP investigated a complaint that, in June 2017, a Logan corrections staff member forced himself on and had non-consensual sexual intercourse with an inmate; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of April 2018. (*Id.* at ISP 00013.)

- ISP investigated a complaint that, between 2014 and May 2017, an inmate performed oral sex on a Logan staff member on approximately 20 different occasions; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of May 2018. (*Id.* at ISP 00014.)

- ISP investigated numerous complaints that, between 2016 and 2017, a Logan corrections staff member sexually assaulted numerous inmates; according to ISP records, the case was pending prosecution for custodial sexual misconduct as of November 2017. (*Id.* at ISP 00015–00020.)

- ISP investigated a complaint that, in mid-2018, an inmate had sexual encounters with two Logan corrections officers on numerous occasions; according to ISP records, the case was pending prosecution for aggravated criminal sexual assault in October 2018. (*Id.* at ISP 00027.)

Additionally, staff-on-inmate sexual assaults at Logan have generated a number of other civil lawsuits. The assaults subject to such civil litigation include the December 2015 rape of an inmate by a corrections officer that is the subject of *Farris v. Kohlrus*, Case No. 17-cv-3279 (C.D. Ill.). They also include the mid-2017 staff-on-inmate sexual assault that is the subject of *Doe v. Ziemer*, Case No. 18-cv-3234 (C.D. Ill.), in which Defendants Burke and Sexton are defendants.

**B.     The At-Issue Discovery Requests.**

One of the central issues in this case is the extent to which Defendants were aware of the widespread culture of sexual misconduct at Logan and enabled it by, among other things, failing to enforce anti-assault policies, conduct meaningful investigations, or discipline offending corrections staff. Accordingly, Plaintiff's discovery to Defendants included, among other things:

- an interrogatory seeking a description of "all allegations, complaints, instances, or other information you are aware of regarding sexual contact, misconduct, harassment, or assault between between IDOC or Logan Correctional Center employees or contractors other than Richard Macleod and an inmate at Logan Correctional Center, and, for each such instance, state; (i) the name of the inmate involved; (ii) when and how you were first made aware; (iii) whether, how, and by whom it was investigated; and (iv) the disposition" (Burke's & Sexton's Resps. to Pl.'s First Set of Interrogs., Exs. E and F, at No. 6);

- an interrogatory seeking a description of "all meetings or other Communications you have participated in regarding sexual contact, misconduct, harassment, or assault committed by IDOC or Logan Correctional Center employees or contractors against inmates at Logan Correctional Center, and, for each such meeting or other Communication, state: (i) the date the meeting or Communication occurred; (ii) the individuals who participated in the meeting: and (iii) the specific subject matter discussed" (*id.* at No. 7); and

- a document request seeking "[a]ll Documents produced by you in *Doe v. Ziemer* (No. 18-CV-3234) [another case naming Burke and Sexton as defendants and alleging sexual assault committed by a Logan Correctional Center staff member against a Logan Correctional inmate between the dates of March 1, 2017 and July 5, 2017] or any other litigation involving allegations of sexual misconduct at Logan Correctional Center or another correctional facility" (*id.* at No. 28 (together with Interrogatories Nos. 6 and 7, "the Requests")).

### C.     Defendants' Responses To The At-Issue Discovery Requests.

The Requests were served on February 4, 2019.  On March 6, 2019, Defendants requested a 30-day extension of time to respond. (Ex. G, Clayton Ankney email to Plaintiff dated March 6, 2019.)  Plaintiff agreed.  (*Id.*)  On April 5, 2019, Defendants requested an additional 21-day extension.  Plaintiff responded that she would be willing to provide Defendants the additional extension, ***provided*** that Defendants' agree to an extension on Plaintiff's deadline to amend her Complaint.  Defendants did not respond to that proposal, and thus their responses to Plaintiff's discovery remained due on April 5.  Notwithstanding that deadline, Defendants' first responded to Plaintiff's discovery on April 26, almost three months after Plaintiff requested the materials and three weeks after the last agreed deadline.

Defendants' responses were hardly worth the wait.  In response to the at-issue interrogatories in particular, Defendants asserted long and familiar boilerplate objections that each interrogatory is "vague, overbroad in time and scope, seeks irrelevant information, and is unduly burdensome."  (Exs. E and F at Nos. 6 and 7.)  Similarly, Defendants objected to the at-issue document request on the grounds that "it is irrelevant and immaterial to this case" because

"Plaintiff has essentially requested 'cloned discovery.'" (Burke's & Sexton's Resps. to Pl.'s First Set of RFPs, Exs. H and I, at No. 28.)

> **D.      This Court's Ruling On Plaintiff's Motion To Compel IDOC To Produce Records Related To Other Sexual Assaults At Logan.**

On May 15, 2019, this Court entered an order compelling IDOC to produce information regarding *other* sexual assaults at Logan, similar to the information Defendants are refusing to produce here.  Regarding the relevance of those materials, this Court explained that:

> Documents regarding other sexual contact, sexual misconduct, and sexual assaults by Logan employees against Logan inmates (collectively Sexual Misconduct) are relevant to the claims against Defendants Burke and Sexton. Doe alleges that Sexton and Burke intentionally or recklessly allowed a substantial risk of harm to exist that inmates such as Doe would be subjected to Sexual Misconduct. Information about other Sexual Misconduct committed by Logan personnel against Logan inmates may be relevant to show the risk of harm to inmates at Logan, including Doe, from Sexual Misconduct and Sexton or Burke's knowledge of such risk of harm.

(Dkt. No. 36 at 8.)  Thus, subject to certain protections and limitations, this Court ordered IDOC to produce: "(1) written complaints submitted to Department employees alleging Sexual Misconduct (Written Complaints); (2) Department investigatory files of Written Complaints; and (3) all other Department investigatory files or logs of allegations of Sexual Misconduct in addition to the allegations set forth in Written Complaints" for the time period March 1, 2015 to July 31, 2018.  (Dkt. No. 36 at 9–10.)[1]

---

[1]    IDOC filed a Rule 72 objection to this order on May 29, 2019.  (Dkt. No. 38.)  Far from showing that the order was "clearly erroneous" or "contrary to law" under Rule 72's demanding standard, IDOC's argument contains no citations to relevant legal authority. (*Id.*) Plaintiff filed an opposition to IDOC's objection on June 12, 2019, which explains the numerous reasons why it lacks merit and should be denied.  (Dkt. No. 48)

### E.      Plaintiff's Efforts To Meet And Confer With Defendants.

IDOC and Defendants are represented by the same counsel.  On May 17, 2019—two days after this Court's order on the IDOC motion to compel—Plaintiff sent Defendants' counsel a letter regarding deficiencies with Defendants' responses to the Requests.  (Ex. J, Plaintiff's email to Clayton Ankney, with Deficiency Letter, dated May 17, 2019.)  Plaintiff's letter specifically explained how the Court's May 15 order addressed many of Defendants objections, and requested to meet and confer on the deficiencies in Defendants' responses no later than May 24, 2019.  (*Id.*)  Defendants did not oblige that request (or several others like it), and did not respond substantively to Plaintiff's letter until June 14, 2019.  (Ex. K, Clayton Ankney email to Plaintiff dated June 14, 2019.)  At that time, Defendants indicated that they maintained their objections to Interrogatory Nos. 6 and 7 and Request for Production No. 28.

Plaintiff continued requesting to meet and confer on these issues over the next few weeks. Defendants eventually agreed, but the only date they were available to do so was June 24, 2019, one day before the day on which this motion became due under the Court's 60-day deadline for motions to compel.  (L.R. 37(a); Dkt. No. 21 ¶ 6.)  At that time, Defendants once again indicated they would stand on their objections to the Requests.  (Ex. L, Plaintiff's email to Clayton Ankney dated June 24, 2019.)  Plaintiff explained that, given Defendants' position, she would be forced to file this motion to compel.

## ARGUMENT AND AUTHORITIES

"The federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and help define and clarify the issues." *Grayson v. City of Aurora*, No. 13 C 1705, 2013 WL 6697769, at *2 (N.D. Ill. Dec. 19, 2013).  "Accordingly, Federal Rule of Civil Procedure 26(b)(1) gives expansive power to discover information 'regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Id.* (citing FED. R. CIV. P. 26(b)(1)).

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* (citing FED. R. CIV. P. 26(b)(1)); *Peterson v. Union Pac. R.R. Co.*, No. 06-3084, 2008 WL 11366445, at *2 (C.D. Ill. Nov. 11, 2008) ("The scope of federal discovery is broad and extends beyond admissible evidence to information that is reasonably calculated to lead to the discovery of admissible evidence."); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (information is relevant if it "bears on" or might reasonably lead to information that "bears on" any material fact or issue in the action).

"When a party from whom documents are requested objects to the request, the party making the request may move for an order to compel production." *Peterson*, 2008 WL 11366445, at *1. "Rule 26 gives the district courts broad discretion in matters relating to discovery." *Elliott v. Superior Pool Prods., LLC*, No. 15-cv-1126, 2016 WL 29243, at *2 (C.D. Ill. Jan. 4, 2016). "Provided the information meets the standard of relevancy described in the federal rules, the burden rests upon the objecting party to show why a particular discovery request is improper. The objecting party must show with specificity that the request is improper." *Peterson*, 2008 WL 11366445, at *1 (quoting *Borom v. Town of Merrillville*, No. 2:07 CV 98, 2008 WL 155018, at *2 (N.D. Ind. Jan. 15, 2008)); *see also In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 306–07 (N.D. Ill. 1997) (rejecting "the familiar boilerplate phrase that each and every request is 'vague, overly broad, unduly burdensome, and seeks information that is not relevant and not reasonably calculated to lead to the discovery of relevant evidence'" and stating "[t]he burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules").

I.      **Evidence Regarding Other Instances Of Staff-On-Inmate Sexual Assaults Is Relevant.**

Defendants object that Plaintiff's Interrogatory Nos. 6 and 7 and Request for Production No. 28—all of which relate to *other* instances of staff-on-inmate sexual misconduct at Logan—seek irrelevant information.  This objection is without merit because evidence related to other sexual assaults at Logan is well within the broad scope of discovery contemplated by Rule 26(b)(1), including because it tends to show that supervisors like Defendants Burke (a former Logan warden) and Sexton (supervisory officer) were on notice of the sexual assault problem, failed to take reasonable steps to correct the problem, and were thereby deliberately indifferent to the risk that Plaintiff would be sexually assaulted.  Plaintiff's argument to the contrary—that the only information relevant to Plaintiff's claims relates to her own sexual assault by Macleod (*e.g.*, (Exs. E and F at No. 6)—has been squarely rejected by federal courts around the country.

For example, in *Keith v. Koerner*, the plaintiff survived summary judgment on her Section 1983 claims against a prison warden with evidence showing, among other things, that the prison (i) "fac[ed] a high[] number of allegations of sexual misconduct," (ii) did not "seriously investigate[]" the allegations, (iii) routinely accepted a staff members' denial over an inmate's allegation, and (iv) "failed to impose meaningful discipline" when "a claim of sexual misconduct was supported by corroborating evidence." *Keith v. Koerner*, 843 F.3d 833, 843–46 (10th Cir. 2016).  Affirming, the Tenth Circuit specifically noted the significant evidence that "[f]acility officials should have recognized certain red flags [regarding the sexual assault problem at the prison] and acted on them." *Id.* at 847.  The court held that "a reasonable jury could infer that [the warden's] practices created an atmosphere where employees … faced minimal supervision and little threat of investigation or discipline for inappropriate sexual behavior with inmates," and thus

"that [the warden] was personally involved in failing to enforce policies in a way that allowed sexual misconduct to occur at [the prison]." *Id.* at 846–47.[2]

Indeed, this Court recently entered an order holding that evidence regarding other sexual assaults at Logan is relevant to Plaintiff's claims, including because:

> Information about other Sexual Misconduct committed by Logan personnel against Logan inmates may be relevant to show the risk of harm to inmates at Logan, including Doe, from Sexual Misconduct and Sexton or Burke's knowledge of such risk of harm. The evidence of other Sexual Misconduct is relevant. The Department's relevance arguments to the contrary are not persuasive.

(Dkt. No. 36 at 8.)  The Court should apply the same reasoning here.  Documents regarding the number and nature of sexual assaults at Logan, and the prison's response thereto, will show, among other things, that Defendants: (1) knew or should have known of the problem; (2) failed to enforce anti-assault policies or otherwise adequately respond; (3) tolerated a widespread culture of sexual assault; and (4) thereby created the toxic atmosphere that allowed Plaintiff's assault to occur. Defendants' relevance objections fail for these reasons.

---

[2]   Courts in the Seventh Circuit are in accord with *Keith*.  *See Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) ("[Defendant's] liability under § 1983 as Cole's supervisor requires some evidence that he knew about Cole's sexual misconduct and facilitated, approved, condoned, or ***turned a blind eye to it.***") (emphasis added); *Bostic v. Vasquez*, No. 2:15-CV-429-PRC, 2018 WL 1762847, at *5 (N.D. Ind. Apr. 12, 2018) (finding that supervisor "w[as] aware of problems and investigations and past incidents" of sexual assault and "possessed the power, and presumably the opportunity, to prevent [offending officer] from continuing to engage in similar misconduct" but "acted with deliberate or reckless disregard for [plaintiff's] constitutional rights by 'turning a blind eye'" to the risk of plaintiff's sexual assault); *Vetter v. Dozier*, No. 06-cv-3528, 2010 WL 1333315, at *14 (N.D. Ill. Mar. 31, 2010) ("Critically, the case law also teaches that supervisors may be liable under Section 1983 for a tort committed by a subordinate where the supervisors were aware of earlier complaints that pertained to individuals other than the plaintiff."); *Miller v. Kozel*, No. 10 C 5381, 2011 WL 5024554, at *15 (N.D. Ill. Oct. 19, 2011) (rejecting defendants' argument that "because this is a suit for money damages against them in their individual capacity, Miller must show each had personal knowledge that Jamal specifically was at an increased risk of suicide" because "[t]he personal involvement requirement does not mean a supervisor had to have knowledge particular to Jamal if all youth in Jamal's situation face the same risk.") (internal citation omitted).

## II.   Requests Regarding Other Staff-On-Inmate Sexual Assaults Do Not Impose An Undue Burden.

Defendants object that the at-issue interrogatories impose an undue burden.[3]  Defendants do not explain why answering basic questions regarding their knowledge of actual or reported instances of staff-on-inmate sexual assaults at Logan, and their participation in meetings or other communications regarding staff-on-inmate sexual assaults at Logan, would be particularly difficult.  For example, Defendants do not state that they were aware of so many staff-on-inmate sexual assaults that their answers would be onerous to type, or that they have possession of and would need to review a significant volume of records in order to answer the questions posed.  Absent any explanation as to why it would be burdensome to draft answers to the interrogatories, Defendants undue burden objection should be rejected.  *E.g.*, *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. at 306–07 (rejecting boilerplate burden objection because "[t]he burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules").

To the extent Defendants are able to articulate an undue burden, Plaintiff does not object to imposing reasonable date ranges on her interrogatories that would minimize any such burden.  For example, in response to IDOC's burden objections to searching for and producing *written complaints* of staff-on-inmate sexual assault at Logan, the Court limited IDOC's production obligation to the date range March 1, 2015 through July 31, 2018.  (Dkt. No. 36 at 10.)   In so doing, the Court held that "[m]isconduct that occurred from March 2015 to July 2018 should provide sufficient information to establish the extent of the risk to inmates and the extent of Burke

---

[3]    Defendants do not assert an undue burden objection with the respect to the at-issue document request for "cloned discovery."  Nor could they; there is little burden in re-producing materials already collected, reviewed and produced in other related litigation.

and Sexton's knowledge of such risk." (Dkt. No. 36 at 10.)  Here, unlike IDOC, Defendants are

*parties* to the litigation, and the "burden" of drafting answers to the at-issue interrogatories is far

lighter than the burden of searching for and producing relevant documents.  Thus, they should, *at*

*a minimum*, be required to answer these interrogatories subject to the same or a similar date range

applicable to IDOC's document production obligation.

III.     **Documents Produced In Other Litigation Involving Sexual Misconduct At Logan Are**
         **Within The Scope Of Permissible Discovery.**

Defendants object to producing "cloned discovery" from other cases alleging Logan staff-

on-inmate sexual misconduct, including *Doe v. Ziemer*, No. 18-cv-3234 (C.D. Ill.), on the grounds

that "Plaintiff should be required to make proper requests describing the actual information in

which they are interested." (Exs. H and I at No. 28.)  The federal rules, however, impose no such

requirement.  For example, in *Peterson v. Wright Medical Technology, Inc.*, No. 11-1330, 2013

WL 655527, at *6 (C.D. Ill. Feb. 21, 2013), the court addressed defendant's argument that

plaintiff's discovery requests improperly sought "cloned discovery."  The court held that it was

defendant's burden to show the requested discovery should be disallowed, explaining that

"[p]utting the burden on the Plaintiff at this stage of discovery is not in the spirit of Rule 26 nor is

it consistent with case law that governs this Court." *Id.*  The court held that:

> In this case, the "cloned" discovery seeks information that is relevant to plaintiff's
> claims and defendants' defenses and that it is reasonably calculated to lead to the
> discovery of admissible evidence on the questions of what Wright knew and when
> Wright learned what it knew about the defect alleged in the complaint and the
> failure that allegedly resulted from that defect.

*Id.*

The same result is merited here.  Defendants have offered no basis for their argument that

the discovery sought in Request for Production No. 28 is irrelevant.  Nor could they, in light of the

substantial overlap between Plaintiff's claims and the claims at issue in *Ziemer* and other cases

alleging Logan staff-on-inmate sexual assault.  For example, in *Ziemer*, the plaintiff's allegations are nearly identical to Plaintiff's here, including that the *Ziemer* plaintiff alleges: (i) she was an inmate at Logan Correctional Center; (ii) she was sexually assaulted by a Logan Correctional Center staff member between the dates of March 1, 2017 and July 5, 2017; and (iii) Defendants Burke and Sexton are responsible for plaintiff's harm.  Given the undeniable overlap between the *Ziemer* complaint and Plaintiff's—including that the alleged sexual assault occurred during the same time period as Plaintiff's sexual assault (*see* Dkt. No. 37 ¶ 29)—documents produced in *Ziemer* are "reasonably calculated to lead to the discovery of admissible evidence" and well within the broad scope of discovery under Rule 26, including for all of the reasons set forth in Section I, *supra*.  Defendants cannot avoid their obligation to produce that information merely because the documents were previously produced in a related case.

Defendants argument to the contrary—that "Plaintiff should be required to make proper requests describing the actual information in which they are interested"—is particularly meritless in light of their numerous "undue burden" objections to responding to Plaintiff's other discovery requests.  Re-producing information Defendants have *already* collected, reviewed and produced in other similar litigation is an efficient and non-burdensome way of providing relevant discovery in this case.  Defendants cannot have it both ways—asserting boilerplate burden objections to Plaintiff's "case-specific" requests, and boilerplate relevance objections to Plaintiff's requests for materials ***already produced*** in related cases. These meritless and inconsistent efforts to frustrate Plaintiffs' ability to develop her claims during discovery are contrary to Defendants' obligations under Rule 26 and should be rejected.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order compelling Burke and Sexton to produce the information and documents responsive to Interrogatory Nos. 6 and 7 and Request for Production No. 28.

Dated:  June 25, 2019

/s/ *Christina E. Sharkey*
Scott W. Fowkes, P.C.
Nicholas F. Wasdin
Christina E. Sharkey
Shannon L. Gonyou
Cassandra M. Burns
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Alan Mills
Elizabeth Mazur
Nicole Schult
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan Road
Chicago, IL 60640
Telephone: (773) 769-1411
Facsimile: (773) 769-2224

*Attorneys for Plaintiff*

**STATEMENT OF COMPLIANCE WITH FRCP 37**

Plaintiff has attempted to confer with Defendants in an effort to resolve these issues without court action.  Plaintiff sent a letter to Defendants on May 17, 2019 outlining deficiencies in Defendants' production and requesting a meet and confer.  Having no response from Defendants, Plaintiffs followed up approximately one week later, on May 23, 2019, to schedule a time to meet and confer.  On May 28, 2019, Defendants responded that they had not had sufficient time to read the letter and suggested a meet and confer on June 7, 2019.  Between receipt of the May 28th email and June 7th, the date of the suggested meet and confer, Plaintiff followed up with Defendants three times in order to schedule the meet and confer, but never heard back.  Plaintiff sent a fourth communication on June 11, 2019, noting that Plaintiff would have to file a motion to compel absent Defendant's cooperation.  On June 14, 2019, Defendants responded in writing to Plaintiff's deficiency letter, and a meet and confer was subsequently held on June 24, 2019.  Despite having conferred, the parties were unable to reach agreement without court action.

    Dated: June 25, 2019                    Respectfully submitted,

                                            /s/ *Christina E. Sharkey*_____
                                            *Attorney for Plaintiff*

16

**CERTIFICATE OF SERVICE**

This is to certify that on June 25, 2019, a true and correct copy of the foregoing was electronically filed and served upon counsel of record via the Court's CM/ECF system.

A copy of the same was served by electronic mail and by depositing same in the United States mail, postage prepaid, addressed to the following:

> Clayton J. Ankney
> Assistant Attorney General
> 500 South Second Street
> Springfield, IL 62701

> Respectfully submitted,

> /s/ *Christina E. Sharkey*
> Christina E. Sharkey
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654
> Telephone: (312) 862-2000
> Facsimile: (312) 862-2200