## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-cv-03191** |
| | ) | |
| **RICHARD MACLEOD, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendants Todd Sexton and Margaret Burke's (collectively, "Defendants") Renewed Motion for Judgment as a Matter of Law, or in the Alternative Motion for New Trial (d/e 248). Defendant Richard Macleod defaulted in this matter. <u>See</u> d/e 12.

Plaintiff, a former inmate at Logan Correctional Center ("Logan"), pursued claims arising from a series of alleged sexual assaults by Defendant Macleod between August 2016 and February 2017.

After a five-day trial in September 2023, the jury found against Defendants Sexton and Burke, awarding $8 million dollars in

compensatory damages and over $10 million dollars in punitive damages to Plaintiff.  See d/e 224.

Defendants renew their motion for judgment as a matter of law, or in the alternative move for a new trial.  For the following reasons, Defendants' Motion (d/e 248) is DENIED.

## I. ANALYSIS

## A. Renewed Judgment as a Matter of Law is Not Warranted.

A motion for judgment as a matter of law made during trial that is denied by the Court must be renewed pursuant to Federal Rule of Civil Procedure 50(b) to preserve issues or grounds for appellate review.  Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 401 (2006).  A renewed motion for judgment as a matter of law should only be granted where, in viewing the evidence in light most favorable to the non-moving party, there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.  Murray v. Chi. Transit Auth., 252 F.3d 880, 886 (7th Cir. 2001).  In making that decision, the Court draws all reasonable inferences in favor of Plaintiff, the prevailing party, and disregards Defendants' evidence which the jury did not have to believe.  See Passananti v. Cook Cnty., 689 F.3d 655, 659 (7th Cir. 2012).  The

Court cannot weigh evidence or make credibility determinations. Id.  The Court must "leave the judgment undisturbed unless the moving party can show that 'no rational jury could have brought in a verdict against [it].'"  Hossack v. Floor Covering Associates of Joliet, Inc., 492 F.3d 853, 859 (7th Cir. 2007) (quotation omitted). In ruling on the renewed motion, the Court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law.  Fed. R. Civ. P. 50(b).  For the following reasons, Defendants' renewed motion for judgment as a matter of law is denied.

### 1. Legally sufficient evidence supports the verdict.

Defendants renew their motion for judgment as a matter of law on Plaintiff's Eighth Amendment claims for deliberate indifference to alleged sexual assaults.

Deliberate indifference is a state of mind—a conscious disregard of an "'excessive risk to inmate health or safety.'"  Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 837).  A deliberate indifference claim contains both an objective and subjective component.  Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir.

2015).  First, the prisoner must show that the harm to which they were exposed was objectively serious.  Id.  Second, the prisoner must show "evidence that an official *actually* knew of and disregarded a substantial risk of harm."  Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer, 511 U.S. at 837).

Defendants argue that the evidence at trial did not support a finding by a reasonable jury that Defendants Burke's and Sexton's deliberate indifference caused Plaintiff's harm,  specifically, that Sexton "responded to the report from inmate Hicks by conducting further investigation."  d/e 248, p. 9.  Additionally, Defendants argue that Defendant Burke took steps to address sexual misconduct at Logan, such as pushing for additional staffing and increasing Prison Rape Elimination Act (PREA) training for staff and inmates.  d/e 248, p. 13.  Further, Defendants argue that consent-related evidence, which was barred from trial, was relevant to whether an inmate faced an objectively substantial risk of harm.  d/e 248, p. 16.

As the Court previously found in its order partially denying summary judgment, there was a genuine issue of material fact regarding whether Defendants Burke and Sexton were deliberately

indifferent to Plaintiff's harm.  d/e 187, p. 37.  Indeed, during trial, the jury heard evidence of how Defendants failed to follow governing laws and policies regarding responses to reports of staff-on-prisoner sexual assault, despite being aware of the proper response required. d/e 253, Ex. 1, 9/20/23 Transcript, 114:21–25; Ex. 2, 9/21/23 Transcript, 463:1–8.  The jury also heard testimony that Defendants did not separate Plaintiff from Defendant Macleod upon learning of the sexual assault allegations, despite their ability to do so.  d/e 253, Ex. 2, 9/21/23 Transcript, 459:19–460:8.  Further, the jury heard testimony that Defendants chose to use Plaintiff as "bait."  d/e 253, Ex. 1, 9/20/23 Transcript, 187:5–10; 187:22–188:1; 188:6–16.  In fact, the substantial risk of harm materialized, when Defendant Macleod assaulted Plaintiff again.  d/e 253, Ex. 1, 9/20/23 Transcript 240:18–23.

Additionally, the jury was instructed:

You have heard evidence about whether Defendants' conduct violated the federal Prison Rape Elimination Act (PREA) and certain rules or procedures of the Illinois Department of Corrections. You have also heard evidence that Defendant MacLeod violated a state law against having sexual contact with a prisoner.

You may consider this evidence in your deliberations. But remember that the issue is whether Defendants Burke and

Sexton failed to protect Plaintiff from being sexually assaulted by Defendant MacLeod, not whether a rule, procedure, state law, or PREA might have been violated.

d/e 228, p. 24.

As instructed, while PREA standards, state law, and IDOC policy may not establish the constitutional standard, they are relevant to the question of whether Plaintiff faced a substantial risk of serious harm. A jury rationally concluded that Defendants acted with deliberate indifference. In doing so, the jury found that Defendants exposed Plaintiff to harm that was objectively serious— a finding distinct from "whether a rule, procedure, state law, or PREA might have been violated." d/e 228, p. 24. Based on the evidence introduced at trial, the Court finds that the jury heard testimony which allowed the rational conclusion that Defendants were indifferent to Plaintiff's sexual assaults.

## 2. Defendants are not entitled to qualified immunity.

Defendants also argue that they are entitled to qualified immunity. "To determine whether a defendant is entitled to qualified immunity, courts must address two issues: (1) whether the defendant violated the plaintiff's constitutional rights, and (2) whether the right at issue was clearly established at the time of the

violation." Rooni v. Biser, 742 F.3d 737, 742 (7th Cir. 2014).  "To be clearly established at the time of the challenged conduct, the right's contours must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,' and 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Rabin v. Flynn, 725 F.3d 628, 632 (7th Cir. 2013) (citations and internal quotation marks omitted).  The burden in disproving that an individual is protected by qualified immunity falls on the plaintiff.  Mordi v. Zeigler, 770 F.3d 1161, 1164 (7th Cir. 2014).

As discussed in the Court's order for summary judgment, a prison inmate has a clearly established right to be free from sexual abuse and a prison official has the responsibility to protect inmates from sexual assault.  d/e 187, p. 55–56 ("Just as the healthcare contractor in Woodward shouldered a constitutional duty to protect inmates from suicide, Polk County bore the constitutional responsibility to protect its inmates from sexual assault." (citing J.K.J. v. Polk Cty., 960 F.3d 367, 381 (7th Cir. 2020).  However, Defendants argue that "the existing case law is not clearly

established that prison officials are required to protect inmates from sexual acts in which they are *willing* participants." d/e 248, p. 15.

While 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, it does not protect for "violations of state laws[,] departmental regulations[,] and police practices." Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003). However, the Seventh Circuit has found that when a state has relevant law regarding consent, the federal courts should defer to the judgment in state law. See Doe v. Oberweis Dairy, 456 F.3d 704, 713 (7th Cir. 2006). In Oberweis Dairy, a Title VII case involving statutory rape, the Seventh Circuit deferred to the state age of consent and opined that "rather than deciding whether a particular Title VII minor plaintiff was capable of 'welcoming' the sexual advances of an older man, [federal courts] should defer to the judgment of average maturity in sexual matters that is reflected in the age of consent in the state in which the plaintiff is employed. That age of consent should thus be the rule of decision in Title VII cases." Id. Similarly, in Mary M. v. North Lawrence Comm. Sch. Corp., the Seventh Circuit vacated and remanded for new trial after a consent instruction was given in a Title IX case involving a 13-year old victim and 21-year old

assailant.  131 F.3d 1220, 1226 (7th Cir. 1997).  The court opined:

"[i]f elementary school children cannot be said to consent to sex in a

criminal context, they similarly cannot be said to welcome it in a

civil context.  To find otherwise would be incongruous." Id. at 1227.

Under Illinois criminal law, sexual contact between staff and

inmates is prohibited; consent is not a defense.  720 ILCS 5/11-

9.2(a), (e).  Similarly, IDOC policy, incorporating PREA, defines

sexual abuse as sexual contact of "[a]n offender by a staff member,

with or without consent of the offender."  Ill. Dept. of Corr.

Administrative Directive 04.01.301.  Here, Defendants were aware

that Illinois criminal law, PREA, and IDOC policy prohibited sexual

relationships between prisoners and prison officials.  d/e 253, Ex.

1, 9/20/23 Transcript, 114:21–25; 214:18–215:10; Ex. 2, 9/21/23

Transcript, 463:1–8.  Defendants were on notice that prisoners

could not have a sexual relationship with prison officials, with or

without consent.

Defendants rely on J.K.J. v. Polk Cty., arguing that while they

were aware that Illinois criminal law, PREA, and IDOC policy

prohibited sexual relationships in which Plaintiff had willingly

participated, those law and policies do not establish the

constitutional standard.  d/e 248, pp. 15, 21.  In <u>J.K.J.</u>, two former inmates sued a jail officer under 42 U.S.C. § 1983 for violating their Eighth and Fourteenth Amendment rights by acting with deliberate indifference to a serious risk of harm to their safety and well-being. 960 F.3d 367, 372 (7th Cir. 2020).  There, the jury found against the officer, who appealed, arguing in relevant part that the district court failed to give the jury a special instruction on his consent defense.  <u>Id.</u> at 376.  The court found that "[i]f the jury had bought [Defendant's] story that [Plaintiffs] were willing participants (and, for that matter, even capable of being willing participants under the circumstances)," the jury would not have found deliberate indifference against the officer.  <u>Id.</u>

However, <u>J.K.J.</u> is silent as to whether consent-related evidence *must* be introduced at trial.  Moreover, the court in <u>J.K.J.</u> refused to disturb the jury's verdict against the officer, noting that the sexual assaults he committed against plaintiffs "objectively imposed serious risk to their safety" and that he "admitted at trial that he knew he was putting the plaintiffs at risk and that his conduct not only violated prison policy but was criminal."  <u>Id.</u> Similarly, here, during trial, the jury heard testimony that

Defendants flouted PREA and IDOC policy by failing to follow proper procedure in responding to Plaintiff's sexual assaults.  d/e 253, Ex. 1, 9/20/23 Transcript, 114:21–25; Ex. 2, 9/21/23 Transcript, 463:1–8.  Defendants acknowledged that the purpose of PREA was to protect an inmate's right to be free from cruel and unusual punishment and that they consciously decided to disregard PREA. d/e 253, Ex. 1, 9/20/23 Trial Transcript, 214:18–215:10. Moreover, Plaintiff testified that she did not want sexual contact with Defendant Macleod—a different scenario from the consensual hypothetical that Defendants suggest occurred here.   d/e 253, Ex. 3, 9/22/23 Trial Transcript 537:20–24, 538:8–10, 546:4–10.  As a result, the Plaintiff's right to be free from sexual assault by prison officials was clearly established.  In the instant case, it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." <u>Rabin</u>, 725 F.3d at 632 (internal quotations omitted).

The Court construes the evidence strictly in favor of the non-moving party.  As a result, the Court finds that whether Plaintiff consented to sexual relations with Defendant Macleod is irrelevant

to the objective risk of serious harm inquiry, and it is reasonable to find that qualified immunity did not apply to Defendants.

## B. A New Trial is Not Warranted.  The Verdict Was Not Against the Manifest Weight of the Evidence, and the Trial Was Fair.

The new trial standard differs from the standard for judgment as a matter of law.  "'A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party.'"  Martinez v. City of Chicago, 900 F.3d 838, 844 (7th Cir. 2018) (quoted cite omitted); see also Johnson v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church, 733 F.3d 722, 730 (7th Cir. 2013).

### 1. The Verdict Was Not Against the Manifest Weight of the Evidence.

Unlike the judgment as a matter of law standard, when assessing whether the verdict was against the manifest weight of the evidence, the Court "has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial."  Mejia v. Cook Cty., 650 F.3d 631, 634 (7th Cir. 2011).  The Court considers all the evidence presented, disregarding only evidence "'reasonable persons could not believe'" because that evidence "'contradicts

indisputable physical facts or laws.'" <u>Id.</u> at 633. (quoted cite
omitted).

Though the standards differ, the same reasons set forth above
for denying judgment as a matter of law also support the denial of a
new trial. Considering all the evidence presented by both sides, the
weight of the evidence and the witnesses' credibility strongly favored
Plaintiff as to her claims against Defendants Sexton and Burke, in
the Court's judgment.

### 2. Evidentiary Rulings Barring Evidence of Plaintiff's Consent Were Not Unfair.

Defendants challenge multiple evidentiary rulings. Erroneous
evidentiary rulings do not alone warrant a new trial. A new trial is
warranted "'only if the error had a substantial influence over the
jury, and the result reached was inconsistent with substantial
justice.' . . . 'Evidentiary errors satisfy this standard only when a
significant chance exists that they affected the outcome of the
trial.'" <u>EEOC v. Mgmt. Hospitality of Racine, Inc.</u>, 666 F.3d 422,
440 (7th Cir. 2012) (quotation and citations omitted); <u>Burton v. City
of Zion</u>, 901 F.3d 772, 777 (7th Cir. 2018) ("[T]here must be a

significant chance that the flawed ruling affected the outcome of the trial.").

Defendants argue that the Court erred in granting Plaintiff's motion *in limine* to bar any evidence that stated or implied that Plaintiff had consented to the sexual relationship with Defendant Macleod.  d/e 248, p. 22.  Specifically, Defendants argue that consent is relevant to: (1) an objective risk of serious harm to an inmate; (2) the subjective prong of the deliberate indifference standard; (3) damages; and (4) causation.  The Court addresses each in turn.

### i. Plaintiff's alleged consent is not relevant to her objective risk of serious harm.

As discussed above, <u>supra</u> Section I.A.1, consent was not relevant to Plaintiff's objective risk of harm.

### ii. Plaintiff's alleged consent is not relevant to the subjective prong of the deliberate indifference standard.

Evidence of consent is also irrelevant to the subjective prong of the deliberate indifference standard.  Plaintiff must show evidence that defendants "actually knew of and disregarded a substantial risk of harm." <u>Petties v. Carter</u>, 836 F.3d at 728.  Defendants argue that evidence of consent was necessary to fully explain their

subjective understanding of the risks to Plaintiff and their responses.  d/e 248, p. 23.

Defendants first argue that inmate Hicks' statement was erroneously redacted.  The unredacted statement read: "Hicks stated this conversation took place in the shower.  Nielson started the conversation by saying I have to get freshened up for my man." Defendants' Ex. 18, p. 3.  Rather, the Court admitted into evidence a redacted version of the statement which read: "Hicks stated this conversation took place in the shower.  Nielson started the conversation by saying [redacted]."  Plaintiff's Ex. 82, p. 3.  Any belief that Defendant Sexton held that Plaintiff was consenting to the sexual encounters with Macleod is negated by his understanding that Plaintiff *could not* consent to Macleod.  d/e 253, Ex. 5, Sexton Dep. at 206:20–23 ("And if she didn't want to tell me, then my thoughts are this was something she wanted to take place. But she can't get consent, I get that . . .").  Defendant Sexton was aware that Illinois state law, PREA, and IDOC policy prohibit sexual relationships between prisoners and prison staff, whether it is consensual or not.

Defendants also argue that they should have been permitted to impeach Plaintiff's expert Professor Brenda Smith with consent-related evidence, specifically testimony from Defendant Sexton's deposition about Hick's statement: "I didn't realize that **she** had given such detailed things in that doc—when I first took that statement.  What I had remembered was I thought **she** just said that **she** was going to go see **her** boyfriend. But apparently **she** gave me a lot more information in that initial statement."  Sexton Dep. at 16:10–16.  As the Court previously ruled, such testimony is ambiguous because it is unclear whose boyfriend Defendant Sexton refers to in the testimony.  The Court stands by its previous ruling here.

Defendants also identify statements from an Illinois State Police (ISP) report suggesting Plaintiff's relationship with Macleod was consensual and argue that they should have been introduced without redactions.  However, Defendants learned of Macleod's sexual assaults on Plaintiff in December 2016 and the ISP report interview containing the identified statements was conducted on August 16, 2017.  See PX 129, at 9; d/e 248, p. 4.  Any indication of a consensual relationship uncovered over a year after the

assaults occurred has no bearing on the Defendants' knowledge at the time the assaults took place.  Furthermore, as to Defendants' argument that they had a right to impeach Plaintiff or "the impression created by plaintiff's other witnesses and her counsel's arguments," Defendants fail to identify the impeachable statements. d/e 248, p. 27.  As a result, evidence of Plaintiff's alleged consent is not relevant to the subjective prong of the deliberate indifference standard.

### iii.  Plaintiff's alleged consent is not relevant to damages.

Evidence of consent is irrelevant to Plaintiff's damages. Defendants argue that Plaintiff's "attitude towards the sexual contact is relevant to the physical, mental[,] and emotional suffering she would experience," citing to <u>Doe v. Oberweis Dairy</u> in support of their position.  d/e 248, p. 27.  However, in <u>Oberweis Dairy</u>, the court noted that while a statutory rape had occurred, the supervisor had not forcibly raped the underage employee.  456 F.3d 704, 713 (7th Cir. 2005).  <u>Oberweis Dairy</u> is distinguishable from the instant case.  As the <u>Oberweis Dairy</u> court noted, it was "uncontested" that the supervisor did not commit forcible rape.  <u>Id.</u> The court also deferred to the state's age of consent.  <u>Id.</u>; <u>see also</u>

Page **17** of 28

<u>Mary M.</u>, 131 F.3d at 1227 (Seventh Circuit vacating and remanding for new trial after a consent instruction was given in a Title IX case involving a 13-year old victim and 21-year old assailant because "[i]f elementary school children cannot be said to consent to sex in a criminal context, they similarly cannot be said to welcome it in a civil context").

Here, the Court deferred to the statutory incapability of a prisoner to consent to a sexual relationship with Defendant Macleod in Illinois.  The jury further heard testimony from Plaintiff that she did not want a sexual relationship with Macleod.  d/e 253, Ex. 3, 9/22/23 Trial Transcript 537:20–24, 538:8–10, 546:4–10.  As a result, evidence of Plaintiff's alleged consent is not relevant to damages.

### iv.  Plaintiff's alleged consent is not relevant to causation.

Evidence of consent is irrelevant to causation.  Defendants argue that Plaintiff "put herself in harm's way" by "willingly engaging in sexual relations with Macleod," citing to <u>Hunter v. Mueske</u> in support of their position.  d/e 248, p. 28.  In <u>Hunter</u>, an inmate requested to be separated from his cellmate, claiming he was in fear for his life.  73 F.4th 561, 563 (7th Cir. 2023).  The

plaintiff brought his concerns to the prison administrator responsible for housing assignments, who did not separate plaintiff from his cellmate.  Id.  Plaintiff's cellmate was later moved for unrelated reasons, but on the day of the move, the plaintiff approached his cellmate and a physical altercation ensued.  Id. at 564.  The court noted that the plaintiff "voluntarily approach[ed]" the violent cellmate and that plaintiff's "deliberate choice to approach" was an intervening cause the defendant "could not reasonably have predicted."  Id. at 570.  Hunter is distinguishable from the instant case.  As Plaintiff points out, Defendant Macleod "was the counselor assigned by the prison to" facilitate Plaintiff's court-ordered phone calls with her daughter.  d/e 253, Ex. 2, 9/21/23 Trial Transcript 345:12–15.  To make these calls, Plaintiff had to coordinate with Defendant Macleod.  d/e 253, Ex. 3, 9/22/23 Trial Transcript 524:5–12.  Evidence of Plaintiff's alleged consent is irrelevant to causation; she was initially put in the position in which she was subject to Defendant Macleod's authority by Defendants.  Moreover, it was an undisputed fact that "[a]t all times, Macleod knew how important Plaintiff's phone calls with her daughter were to her and he knew that Plaintiff would need to go

through him in order to have the calls." d/e 229, p. 27.  In

contrast, in <u>Hunter</u>, the plaintiff approached his cellmate, someone

of equal authority and power.  Plaintiff's alleged consent was not an

unforeseeable superseding cause when Defendants assigned

Macleod as her counselor.  As a result, evidence of Plaintiff's alleged

consent is not relevant to causation.

### v. The verdict was not inconsistent with substantial justice.

Furthermore, the risks of prejudice and undue confusion

outweigh any probative value by admitting any evidence of

Plaintiff's alleged consent.  Federal Rule of Evidence 403 states:

"[t]he court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."  Fed. R. Evid. 403.  Plaintiff argued that

admission of consent-related evidence is irrelevant and prejudicial

on numerous occasions.  <u>See</u> d/e 203, p. 4 n.2; d/e 253, Ex. 2,

9/21/23 Trial Transcript 482:15–19; d/e 253, Ex. 3, 9/22/23 Trial

Transcript 618:10–16.  The Court reiterates its position that

admission of consent-related evidence would be irrelevant and prejudicial, outweighing any probative value.  This is the case given the lack of consent as a defense under Illinois law and the PREA, as well as the absence of Defendant Macleod, the other party in the "relationship," from trial.  In sum, exclusion of consent-related evidence was not unfair to the moving party.  Accordingly, Defendants' motion for a new trial based on errors in evidentiary rulings is denied.

### 3. Jury Instructions

A new trial is warranted when a jury instruction inaccurately states the law, and the instruction prejudiced a party by confusing or misleading the jury.  O'Donnell v. Caine Weiner Co., LLC, 835 F.3d 549, 553 (7th Cir. 2019).  Defendants argue that the Court erred in: (1) giving the jury a verdict form that did not allow for all possible verdicts and (2) refusing to instruct on specific requirements of deliberate indifference.  The Court addresses each argument in turn.

### i. The jury verdict form properly reflected Defendants' joint and several liability.

Defendants argue that the verdict form submitted to the jury did not allow for all possible verdicts.  d/e 248, p. 29.  Specifically, Defendants argue that "[e]ach alleged attack on [P]laintiff by Macleod produced a discrete injury" and that "the verdict form provided to the jury did not allow them to make the required individual determinations of liability that would support the compensatory damages awarded."  d/e 248, p. 31.

"Joint and several liability is a theory of recovery which requires that the plaintiff[] . . . establish that each defendant acted in concert to 'produce a single, indivisible injury.'"  Harper v. Albert, 400 F.3d 1052, 1061–62 (7th Cir. 2005) (citing Watts v. Laurent, 774 F.2d 168, 179 (7th Cir. 1985)).  Here, each attack on Plaintiff by Defendant Macleod constituted a single indivisible injury because it was part of an ongoing, overarching neglect of Plaintiff's safety.

"[I]n order for defendants to be held jointly and severally liable, all of the named defendants must have visited some manner of wrong (here a constitutional violation) on the plaintiff."  Harper, 400 F.3d at 1062.  In Harper, the court rejected the theory of joint and several liability, noting that plaintiffs "failed to even establish that

each and every one of the defendants ever touched the plaintiffs,
much less that any of the guards used excessive force against
them." Id.  However, Harper is distinguishable from the instant
case.  Here, Plaintiff established that *both* Defendants took actions
(or inactions) that were deliberately indifferent to Plaintiff's sexual
assaults in 2016 and 2017.  In other words, the sexual assaults in
2016 and 2017 were part of a singular, ongoing deliberate
indifference to Plaintiff's sexual assaults.  As a result, the assaults
in 2016 and 2017 constitute a single indivisible injury.

    The Seventh Circuit has instructed that:

> In cases involving joint and several liability for a single
> indivisible injury, a verdict form should ask the jury first
> to indicate which, if any, of the defendants are liable.
> Second, if at least one defendant is found liable, the form
> should instruct the jury to determine the total amount of
> damages for the plaintiff's injury, an inquiry that is wholly
> separate from the liability decisions made in the first step.
> The form should not be structured in a way that would
> invite the jury to divide the damages for a single injury
> among defendants or theories of recovery.

Thomas v. Cook Cty. Sheriff's Dept., 604 F.3d 293, 312–13 (7th Cir.
2010.

    The Court followed precisely the approach laid out by the
Seventh Circuit here.  See d/e 224.  As to the Court's refusal of

Defendants' proposed special interrogatories, the Court has broad

discretion under Federal Rule of Civil Procedure 49(b) to submit

special interrogatories to juries.  Cruz v. Town of Cicero, 275 F.3d

579, 591 (7th Cir. 2001).  For the reasons stated above, the Court

reiterates that they were unnecessary.  As a result, the Court denies

a new trial on the grounds that the jury verdict form did not allow

for all possible verdicts.

### ii.   Refusal to instruct on the definition of deliberate indifference did not inaccurately reflect the law or prejudice Defendants.

Defendants argue that the Court erred in refusing to instruct

the jury on the definition of deliberate indifference.  d/e 248, p. 32.

The Court gave Seventh Circuit Pattern Instruction 7.16 (with

modifications) to the jury, which contained, in relevant part, the

element that "[t]he Defendant under consideration consciously

failed to take reasonable measure to prevent the assault or

assaults."  d/e 229, p. 29.  The Committee Comments to the

Seventh Circuit Pattern Instruction 7.16 state that the

aforementioned element "encompass[es] the concept of what the

case law refers to as 'deliberate indifference.' The Committee has

not included that term in the instructions because most jurors will

not be familiar with it, and it can be described using ordinary language."  Seventh Circuit Pattern Instruction 7.16, Committee Comment (c).  A refusal to instruct the jury on the definition of deliberate indifference did not inaccurately reflect the law or prejudice Defendants.  Rather, it is in line with the Seventh Circuit Pattern Instructions.  As a result, the Court denies a new trial on the grounds that it refused to instruct on deliberate indifference.  Accordingly, Defendants' motion for a new trial based on errors in jury instructions is denied.

### 4. The Court's rulings did not have a cumulative effect of denying Defendants a fair trial.

Defendants argue that the cumulative effect of the Court's alleged errors and rulings denied the Defendants a fair trial.  Cumulative prejudice exists when the court's erroneous decisions have a "substantial and injurious effect or influence on the determination of [the] jury."  Cerabio LLC v. Wright Med. Tech., Inc., 410 F.3d 981, 994 (7th Cir. 2005).  However, "[i]f there are no errors or a single error, there can be no cumulative error."  Christmas v. City of Chi., 682 F.3d 632, 643 (7th Cir. 2012) (citing United States v. Allen, 269 F.3d 842, 847 (7th Cir. 2001)).  For the reasons stated

above, <u>supra</u> Section B, the Court's decisions relating to consent-related evidence did not constitute error.

The Court also properly excluded Plaintiff's prior felony convictions. While Federal Rule of Evidence 609 permits such evidence if they meet certain requirements, admittance of such evidence is subject to the Federal Rule of Evidence 403 balancing test. Fed. R. Evid. 609(a)(1)(A). Plaintiff's prior felony convictions for drug-induced homicide and drug distribution had no probative value to Plaintiff being sexually assaulted in prison. Moreover, any probative value would be substantially outweighed by unfair prejudice.

Furthermore, evidence relating to Defendant Burke's relationships with coworkers, as well as Defendant Sexton's and Macleod's e-mails, were relevant to whether Defendants' acted with deliberate indifference to Plaintiff's sexual assaults. Such evidence was also relevant to the sexually-fueled environment at Logan, and how such behavior at the management level could influence inmates' perceptions around reporting sexual assault.

The Court's allowance of stipulations through default by Defendant Macleod to be presented to the jury was also appropriate

and did not confuse the jury.  The Court read jury instructions specifically stating "[t]hese facts are deemed admitted by Defendant MacLeod and established by the Court as to him," and "[t]he following stipulations are made only as it relates to Defendant MacLeod and are not stipulated by Defendant Margaret Burke and Defendant Todd Sexton.  You should not consider these facts as any admission of fact or liability by Defendant Burke or Defendant Sexton." d/e 229, p. 28.  The Court made clear that these stipulations related only to Defendant Macleod.

Finally, evidence related to Plaintiff's transfer from Logan to Decatur was not in error because it was relevant to Plaintiff's damages.  The jury heard testimony regarding Decatur's absence cosmetology training she was pursuing at Logan, which created loss of opportunity to Plaintiff.  d/e 253, Ex. 3, 9/22/23 Trial Transcript 544:3–23, 582:18–583:1.  Accordingly, Defendants' motion for a new trial based on the cumulative effect is denied.

## II. CONCLUSION

For the reasons stated, Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative for a New Trial (d/e 248) is DENIED.

Page **27** of **28**

**ENTERED:  March 7, 2024.**

**FOR THE COURT:**

*/s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**