## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-cv-03191** |
| | ) | |
| **RICHARD MACLEOD, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Plaintiff's Motion for Attorney's Fees for Kirkland & Ellis LLP ("Kirkland") and for Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") (d/e 232) and Motion for Attorney's Fees for Uptown People's Law Center ("UPLC") (d/e 233). For the following reasons, Plaintiff's Motions (d/e 232, 233) are GRANTED in part and DENIED in part. The Court, in its discretion, awards Plaintiffs $2,041,578.52 in attorney's fees ($1,793,069.02 for Kirkland, $99,654.00 for Quinn, and $148,855.50 for UPLC) and $1,349.01 in costs for UPLC.

### I.    BACKGROUND

Plaintiff, a former inmate at Logan Correctional Center ("Logan"), pursued claims arising from a series of alleged sexual assaults by Defendant Richard Macleod between August 2016 and February 2017 against Defendants Todd Sexton, Margaret Burke, and Macleod.  Defendant Macleod was defaulted in this matter.  <u>See</u> d/e 12.

On September 25, 2023, after a five-day trial, the jury found against Defendants and the Court entered judgment for Plaintiff on her Eighth Amendment claim, awarding $8 million dollars in compensatory damages and $11.3 million dollars in punitive damages to Plaintiff.  <u>See</u> d/e 224.

Plaintiff now requests attorney's fees.  Plaintiff's counsel Kirkland and Quinn seek attorney fees and related staffing fees of $3,139,341.37 and $119,584.80, respectively.  <u>See</u> d/e 264, p. 10. Additionally, Plaintiff's counsel UPLC requests attorney fees of $712,020.00 and costs of $1,349.01.  <u>See</u> d/e 265, p. 5.  In total, Plaintiffs' counsel seek $3,971,036.17 in attorney's fees and costs.

## II.   LEGAL STANDARD

The Civil Rights Attorney's Fees Awards Act provides that: "[i]n any action or proceeding to enforce a provision of . . . [Section 1983]

. . . the court, in its discretion, may allow the prevailing party . . . a reasonable fee as part of the costs[.]"  42 U.S.C. § 1988.  The Court's analysis of an appropriate fee award begins with determining whether a plaintiff is a "prevailing party."  Linda T. v. Rice Lake Area Sch. Dist., 417 F.3d 704, 709 (7th Cir. 2005).  If so, the court must determine whether the claimed fees are "reasonable" under the circumstances.  Id.   The "starting point" for this inquiry is the lodestar figure—"the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate."  Estate of Enoch ex rel. Enoch v. Tienor, 570 F.3d 821, 823 (7th Cir. 2009) (citation omitted).  The fee applicant bears the burden of showing the reasonableness of the time requested as well as the hourly rates.  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  Once this figure is determined, the court considers the factors set out in Hensley and adjusts the fee award accordingly.  Tienor, 570 F.3d at 823.  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the

results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430 n.3.

## III.   ANALYSIS

### A. Plaintiff is a Prevailing Party.

A party need not prevail at trial in order to qualify as a "prevailing party" for purposes of § 1988.  Maher v. Gagne, 448 U.S. 122, 129 (1980) ("Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.").  Rather, a prevailing party is one who has obtained at least some relief on the merits of her claim by means of an enforceable judgment against the defendant.  Farrar v. Hobby, 506 U.S. 103, 111 (1992).  In determining when a plaintiff is a prevailing party, the court must determine: "1) whether the lawsuit was causally related to the relief obtained, and 2) whether the defendant acted gratuitously, that is, the lawsuit was frivolous, unreasonable or groundless."  Gekas v. Att'y Reg. & Disciplinary Comm'n, 793

F.2d 846, 849 (7th Cir. 1986).  If a plaintiff fails either part of the test, she is not a prevailing party.  Id.

Plaintiff's original Complaint alleged that Defendants Macleod, Sexton, and Burke violated her Eighth Amendment rights when Defendant Macleod sexually assaulted her at Logan and Defendants Sexton and Burke failed to protect her from those assaults.  See d/e 1.  Plaintiff also alleged that Defendants Sexton and Burke violated her First Amendment rights by retaliating against her for complaining about the assaults by transferring her to Decatur Correctional Center.  Id.  Plaintiff filed her Amended Complaint, restating the same allegations as in her original Complaint, as well as adding 22 new Defendants to her Eighth Amendment claim.  See d/e 37.

On September 29, 2021, the parties stipulated to the dismissal of two Defendants who had been added in the Amended Complaint. See d/e 183.  On the same day, the Court granted the dismissal. See Text Order dated September 29, 2021.

On March 29, 2023, the Court partially granted Defendants' Motion for Summary Judgment.  See d/e 187.  The Court granted judgment on Plaintiff's Eighth Amendment claim in favor of all

remaining Defendants except for Defendants Macleod, Sexton, and Burke.  Id.  The Court also granted summary judgment for Defendants Sexton and Burke on Plaintiff's First Amendment retaliation claim.  Id.

Defendants argue that Plaintiff is not entitled to fees relating to (1) her retaliation claim, (2) Defendants who obtained summary judgment or settled out of the case, and (3) counsel's consideration of adding additional plaintiffs to the case.  The Court addresses each in turn.

### 1. Plaintiff is Entitled to Fees Relating to Her Retaliation Claim.

Defendants argue that, because Plaintiff was only a prevailing party on the Eighth Amendment claim, attorney's fees related to the retaliation claim are not recoverable.

In many civil rights cases, "plaintiff's claims for relief involve a common core of facts or will be based on related legal theories." Hensley, 461 U.S. at 435.  "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have [her] attorney's fee reduced simply because the district court did not adopt each contention raised."  Id. at 440.  But see Jackson v. Ill.

<u>Prisoner Review Bd.</u>, 856 F.2d 890, 894 (7th Cir. 1988) ("Time spent on claims for relief that are unsuccessful and unrelated to the ultimate result achieved are not compensable.").  In a case with related claims, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  <u>Hensley</u>, 461 U.S. at 435.

Defendants argue that while there is "some factual relationship" between Plaintiff's First and Eighth Amendment claims, "[e]ither claim could be developed and tried with limited factual overlap with the other."  d/e 254, p. 4.  Furthermore, Defendants argue that "there is no overlap in the applicable law for the two claims."  <u>Id.</u>

The Court finds that Plaintiff's First and Eighth Amendment claims involved a common core of facts.  Plaintiff's Eighth Amendment Claim alleged Defendants Sexton and Burke failed to protect her from Defendant's Macleod's sexual assaults.  The basis of Plaintiff's First Amendment retaliation claim stemmed from Plaintiff's request for protection from those sexual assaults.  As such, the First and Eighth Amendment claims were not "unrelated." <u>Hensley</u>, 461 U.S. at 440 (a claim is unrelated if it is "distinct in all

respects from [plaintiff's] successful claims."). Although Defendants prevailed on the First Amendment claims on summary judgment, the events surrounding the retaliation were interrelated and based upon the factual nexus of Plaintiff's Eighth Amendment claim. See Jaffee v. Redmond, 142 F.3d 409, 413 (7th Cir. 1998) ("Hensley makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent on successful claims may be compensable if it also contributed to the success of other claims."). Thus, the Court will not categorically exclude time spent on the First Amendment claim.

### 2. Plaintiff is Entitled to Fees Relating to the 20 New Defendants Added to Plaintiff's Amended Complaint.

Defendants argue that, because the Court granted summary judgment against the 22 new Defendants added to Plaintiff's Amended Complaint, attorney's fees related to those 22 Defendants are not recoverable.

A plaintiff will be considered a "prevailing party" and entitled to reasonable attorney's fees under section 1988 if the plaintiff has succeeded "'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit.'" Mary

<u>Beth G. v. City of Chi.</u>, 723 F.2d 1263, 1278 (7th Cir. 1983)

(internal citation omitted).  When "a plaintiff raises a claim for relief

that relates to several defendants, not all of whom are held liable,

the total time expended on the claim for relief should be counted in

awarding the plaintiff attorney's fees so long as the defendants from

whom plaintiff did not obtain relief were not named frivolously."  <u>Id.</u>

at 1281.

The Court finds that Defendants may recover attorney's fees

related to 20 of the 22 new Defendants added to Plaintiff's Eighth

Amendment claim in her Amended Complaint.  Plaintiff was

successful at trial against Defendants Burke, Sexton, and Macleod

on her Eighth Amendment claim.  <u>Jaffee</u>, 142 F.3d at 413 ("[T]ime

spent pursuing an unsuccessful claim may be compensable if it

also contributed to the success of other claims.").  Further,

Plaintiff's did not name the 20 new Defendants frivolously.  The

time Plaintiff's counsel spent investigating the 20 new Defendants

elicited information that was eventually presented to the jury.  The

extent of the later-dismissed IDOC Defendants' knowledge of

Plaintiff's sexual assaults during discovery ultimately allowed

Plaintiff's counsel to present to the jury the extent to which

Defendants Burke and Sexton were liable on Plaintiff's Eighth Amendment claim.

However, "a voluntary settlement by the defendant . . . does not entitle a plaintiff to attorney[']s fees." Bingham v. New Berlin Sch. Dist., 550 F.3d 601, 603 (7th Cir. 2008). The parties stipulated to the dismissal of Defendants Dr. Keena Peek and Dr. Jennifer McClellan. See d/e 183; Text Order dated September 29, 2021. Since the Court never rendered a judgment on the merits of Plaintiff's claims against Defendants Peek and McClellan, Plaintiff is not a prevailing party as it relates to those Defendants. As a result, the Court finds that Plaintiff may recover attorney's fees related to 20 of the 22 new Defendants added to Plaintiff's Eighth Amendment in her Amended Complaint, and excludes time spent relating to Defendants Peek and McClellan. However, rather than scrutinizing ninety-eight pages of Kirkland's billing entries line-by-line to identify the time attributed to Defendants Peek and McClellan, the Court will account for time attributed to those Defendants when discounting Kirkland's billed hours for vague time entries. See infra Section III.B.2.iv.

### 3. Plaintiff is Entitled to Fees Relating to Potential Additional Plaintiffs.

Defendants oppose the grant of fees related to Plaintiff's counsel's possible representation of other individuals against Defendants.  The Court finds that Defendants may recover attorney's fees relating to additional potential plaintiffs.  Plaintiff's counsel's assessment of potential additional plaintiffs contributed to obtaining a full picture of Plaintiff's Eighth Amendment claim, and ultimately, Plaintiff's success at trial.  Additionally, there is no indication that Plaintiff's counsel approached the possibility of adding additional plaintiffs frivolously; rather, one potential plaintiff actually provided testimony during trial.  See Mary Beth, 723 F.2d at 1281; d/e 260, p. 7.  As a result, the Court finds that Defendants may recover attorney's fees relating to potential additional plaintiffs.

### B. The Court Adjusts the Lodestar Amount Downward to Reflect an Appropriate Hourly Rate and Reasonably Expended Attorney's Hours.

Plaintiff requests total attorney fees of $3,139,341.37 for Kirkland, $119,584.80 for Quinn, and $712,020 for UPLC.  See d/e 264, p. 11; d/e 265, p. 5.

### 1. Plaintiff's attorneys' hourly rates are reduced to reflect the prevailing market rate in the Central District of

**Illinois, the attorneys' experience, and the complexity of the case.**

First, the Court addresses the reasonableness of the hourly rates sought by Plaintiff's attorneys. A reasonable hourly rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407 (7th Cir. 1999). It is presumed that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 640 (7th Cir. 2011) (citing Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). If that burden is satisfied, the burden shifts to the other party to offer evidence that sets forth "good reason" why a lower rate should be awarded. People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1313 (7th Cir. 1996) (internal quotation marks and citations omitted). If the party seeking fees fails to carry its burden, the Court may properly "make

its own determination of a reasonable rate." Pickett, 664 F.3d at 640 (citation omitted).

Plaintiff argues that, as the prevailing party, she should be awarded the full lodestar, or an enhanced fee award, because the fees are supported by her attorneys' qualifications and experience, prior rates, and work on this case, as well as the rates other attorneys with similar experience charge. Plaintiff provided the lodestar calculation with the hourly rate and hours expended (d/e 232, Ex. 6D, Ex. 11E; d/e 233), itemized lists of the services performed (d/e 232, Ex. 6B, Ex. 11F; d/e 233, Ex. 7), declarations describing each attorney's experience (d/e 232, Ex. 6A, Ex. 11E; d/e 233, Ex. 1, 2, 3), and declarations from other attorneys to support the requested rates (d/e 233, Ex. 4, 5, 6). The Court notes that Plaintiff's counsel did not submit any declarations from local attorneys in the Central District of Illinois.

Three law firms were involved in representing Plaintiff: Kirkland, Quinn, and UPLC. Plaintiff's counsel for Kirkland and Quinn seek hourly rates based off the Fitzpatrick Matrix, while UPLC seeks hourly rates ranging from $450 to $1,000. Defendants "make no representation regarding reasonableness of the hourly fee

on its face," and defers to the Court to make the determination of

reasonableness.  d/e 254, p. 7.

### i.    Kirkland

### a. Partners

Plaintiff seeks the following rates for the time Kirkland

attorneys expended on this case.  d/e 232, Ex. 6D, p. 2.

| Name | Rate per hour |
|---|---|
| Whitney Becker | $582 |
| Christa C. Cottrell | $583 to $717 |
| Britt Cramer | $558 to $638 |
| Rebecca Fitzpatrick | $674 |
| Scott W. Fowkes, P.C. | $664 to $695 |
| Jessica Giulitto | $584 |
| James F. Hurst, P.C. | $723 |
| Christina Sharkey | $430 to $612 |
| Jenna Marie Stupar | $598 |
| Brian A. Verbus | $486 |
| Nick Wasdin | $458 to $638 |

Plaintiff's counsel Kirkland should be fairly compensated for

their work, especially considering the hours expended, their level of

experience, and the results obtained.  However, the Court finds that

Plaintiff has not established that the proposed hourly rates are

reasonable.  Rather than providing evidence of her attorneys' actual

billing rate for comparable work or what they were awarded in

similar prisoners' rights cases, Kirkland utilizes the Fitzpatrick

Matrix to calculate a discounted rate.  d/e 232, p. 12.  The

Fitzpatrick Matrix offers a "measure of the prevailing market rate

for complex federal litigation in the [D.C.] District." J.T. v. District

of Columbia, 652 F. Supp. 3d 11, 32 (D.D.C. 2023).  The Court does

not find the Fitzpatrick Matrix as particularly dispositive as to the

prevailing market rate for attorneys in the Central District of Illinois

because the underlying dataset of the Fitzpatrick Matrix is based on

the hourly rates charged by lawyers litigating in the United States

District Court for the District of Columbia.  Thus, the Court makes

"its own determination" of a reasonable rate.  Pickett, 664 F.3d at

640.

 The Court has reviewed the attached biographies of the

Kirkland partners.  See d/e 232, Ex. 6A.  These partners are located

in Kirkland's Chicago, Illinois office.  Plaintiff has not identified

specific rates awarded to other civil rights attorneys of comparable

experience within the relevant community.  See Pickett, 664 F.3d at

647.  Kirkland has only provided biographies for the following

attorneys: Christa C. Cottrell; Britt Cramer; Rebecca Fitzpatrick;

James F. Hurst, P.C.; Christina Sharkey; Jenna Marie Stupar; and

Brian A. Verbus.  See d/e 232, Ex. 6A.  Kirkland has not provided

biographies for: Whitney Becker; Scott W. Fowkes, P.C.; Jessica Giulitto; and Nick Wasdin.

Cottrell graduated from University of Michigan Law School in 2005 and clerked for Judge Cornelia G. Kennedy for the Sixth Circuit. See d/e 232, Ex. 6A, pp. 4–5. She has nineteen years of experience and focuses on complex commercial litigation. Id. at p. 4.

Cramer graduated from Harvard Law School in 2012 and clerked for Judge Judith W. Rogers for the District of Columbia Circuit. Id. at pp. 10–11. She has twelve years of experience and litigates matters concerning contract, products liability, and complex commercial disputes. Id. at 10.

Fitzpatrick graduated from the University of Chicago Law School in 2009 and worked as a Special Assistant U.S. Attorney in the United States Attorney's Office for the Middle District of North Carolina prior to joining Kirkland. Id. at pp. 13, 17. She has fifteen years of experience and focuses on fact- and science-intensive commercial, mass tort, and products liability litigation. Id. at 13.

Hurst graduated from the University of Pennsylvania Law School in 1989 and clerked for Judge Marvin E. Aspen for the

United States District Court for the Northern District of Illinois.  Id. at pp. 18, 21–22.  He has 35 years of experience and has argued dozens of appeals, including before the United States Supreme Court.  Id. at p. 18.

Stupar graduated from DePaul University College of Law in 2015 as valedictorian and has nine years of experience.  Id. at p. 33.  She focuses her practice on complex commercial litigation and maintains a steady pro bono practice.  Id. at pp. 33–34.

Verbus graduated from Indiana University Maurer School of Law in 2013 and has eleven years of experience.  Id. at p. 36.  He focuses on intellectual property litigation, including patent litigation and Lanham Act false advertising and trademark disputes.  Id.

Sharkey worked at Kirkland after she graduated Northwestern University School of Law in 2014.  See d/e 232, Ex. 12, p. 3.  She was a partner at Kirkland for a majority of the case's pendency before she moved to Quinn's Chicago office as Of Counsel in 2023, focusing on complex commercial, product liability, and mass tort litigation.  d/e 232, Ex. 11, ¶ 5; Ex. 11E.

As referenced in the chart above, Plaintiff seeks hourly rates ranging from $430 to $723.  The Court acknowledges the successful

result that Plaintiff's attorneys obtained in this complex case and the impressive careers of the attorneys. After five years of litigation, discovery, summary judgment briefing, and a five-day trial, Plaintiff's counsel obtained a $19.3 million jury verdict against Defendants Macleod, Sexton, and Burke. However, a survey of recent fee awards in this district reflects a much lower range of hourly rates than those requested by Plaintiff. See, e.g., Jackson v. City of Peoria, No. 17-cv-1129, 2019 WL 5103806, at *6–8 (C.D. Ill. Oct. 11, 2019) (finding $425 per hour the prevailing market rate and a reasonable hourly rate for attorney with over twenty years of experience who provided affidavits of other local attorneys and prior fee agreements); Donaldson v. MBR Cent. Ill. Pizza, LLC, No. 18-cv-3048, 2019 WL 4447969, at *3 (C.D. Ill. Sept. 17, 2019) (noting that plaintiffs' attorneys' rates of $250 to $400 per hour "are in line with the rates that have recently been approved in this District"); Norton v. City of Springfield, No. 15-3276, 2018 WL 6601083, at *3 (Dec. 17, 2018) (awarding $300 per hour for experienced attorney and $250 per hour for less experienced associate in the Central District of Illinois); Abellan v. HRDS Le Roy IL, LLC, No. 16-cv-1037, 2018 WL 6247260, at *10 (C.D. Ill. Nov. 29, 2018) (approving fee award

where attorneys and paralegals billed rates between $150 and $400 per hour).  Moreover, the Court has assessed the reasonableness of requested attorney's fees in Second Amendment cases and has found effective hourly rates of $300 to $600 reasonable.  See Pub. Interest Legal Found., Inc. v. Bernadette Matthews, et al., No. 20-cv-3190, docket entry 49 (C.D. Ill. June 8, 2022) (awarding attorney's fees of $350 and $525 per hour); Moore v. Madigan, No. 11-cv-3134, docket entry 109 (C.D. Ill. July 21, 2015) (awarding attorney's fees of $640 per hour).  Those cases involved attorneys of comparable expertise and experience as Plaintiff's counsel.

However, the Seventh Circuit has instructed that "just because the proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward." Mathur v. Bd. of Trs. of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003).  Here, there is no indication that Plaintiff attempted to search for an attorney in central Illinois and that her search was unsuccessful.  However, the Court believes that a reduction is appropriate based on the possibility that a local attorney within the Central District of Illinois would have obtained a comparable successful result for the Plaintiffs.  See Norton v. City of Springfield,

No. 15-3276, 2018 WL 6601083, at *3 (C.D. Ill. Dec. 17, 2008) (court reducing the attorney's fees by 20% because he was from Chicago and there was a "likelihood - uncertain though it is - that a local [Springfield] civil rights attorney would have taken the case and achieved an equally favorable result for the plaintiffs.").

As a result, the Court will apply a 20% reduction to result in the effective hourly rate as follows, a rate it finds more reasonable. See Taylor v. Berryhill, No. 1:16-cv-03474-MJD-JMS, 2018 WL 4932042, at *2 (S.D. Ind. Oct. 10, 2018) ("Within the Seventh Circuit, fee awards equivalent to hourly rates ranging from $400 to $600 are consistently found to be reasonable.").

| Name | Rate per hour |
|------|---------------|
| Whitney Becker | $466 |
| Christa C. Cottrell | $466 to $574 |
| Britt Cramer | $446 to $510 |
| Rebecca Fitzpatrick | $539 |
| Scott W. Fowkes, P.C. | $531 to $556 |
| Jessica Giulitto | $467 |
| James F. Hurst, P.C. | $578 |
| Christina Sharkey | $344 to $490 |
| Jenna Marie Stupar | $478 |
| Brian A. Verbus | $389 |
| Nick Wasdin | $366 to $510 |

This award recognizes Plaintiff's counsels' successful results in this case, the complexity of the case, and their experience while

reflecting the local rate charged by attorneys in the Central District of Illinois and the possibility of obtaining local counsel.

### b. Associates

Plaintiff seeks the following rates for the time Kirkland associates expended on this case.  d/e 232, Ex. 6D, p. 2.

| Name | Rate per hour |
|---|---|
| Cassie Burns | $412 to $474 |
| Evelyn T. Cai | $520 |
| Shannon L. Gonyou | $384 to $471 |
| Sarah Legault | $553 |
| Jennifer Mancini | $485 |
| Diego Jorge Martinez-Krippner | $427 to $489 |
| Reid McEllrath | $598 |
| Claire Stephens | $443 to $584 |

The Court has reviewed the attached biographies of the Kirkland attorneys.  See d/e 232, Ex. 6A.  Kirkland has only provided biographies for the following attorneys: Evelyn T. Cai; Sarah Legault; Jennifer Mancini; Reid McEllrath;[1] and Claire Stephens.  Id.  Kirkland has not provided biographies for: Cassie Burnes and Shannon L. Gonyou.

---

[1] The Court notes that although Kirkland classifies McEllrath as an associate, see d/e 232, Ex. 6D, McEllrath's biography indicates that he is a partner. See d/e 232, Ex. 6A, p. 26.

Cai graduated from Yale Law School in 2020, has three years of experience, and is a litigation associate.  Id. at p. 2.  Mancini graduated from Cornell Law School in 2022, has two years of experience, and is a litigation associate.  Id. at 25.

Legault graduated from the University of Virginia School of Law in 2018 and clerked for Judge Gregory A. Phillips of the Tenth Circuit and Judge James Browning of the United States District Court for the District of New Mexico.  Id. at p. 23.  She has five years of experience and focuses on general corporate litigation.  Id.

McEllrath graduated from University of Washington School of Law in 2015 and worked at Stoel Rives LLP for seven years prior to joining Kirkland.  Id. at pp. 26–27.  He has nine years of experience and focuses on complex commercial litigation.  Id. at p. 26.

Stephens graduated from Chicago-Kent College of Law at Illinois Institution of Technology in 2016 and worked at Harris Winick Harris LLP for three years prior to joining Kirkland.  Id. at 28, 31.  She has seven years of experience and is a restructuring associate.  Id. at p. 28.

For the reasons previously stated, taking into consideration the Kirkland associate attorneys' professional experience, the

complex nature of this matter, the rates awarded by other courts in the Central District of Illinois, and the possibility of Plaintiff obtaining local counsel, the Court applies a 20% reduction to the hourly rates proffered by Kirkland.

| Name | Rate per hour |
|------|---------------|
| Cassie Burns | $330 to $379 |
| Evelyn T. Cai | $416 |
| Shannon L. Gonyou | $307 to $377 |
| Sarah Legault | $442 |
| Jennifer Mancini | $388 |
| Diego Jorge Martinez-Krippner | $342 to $391 |
| Reid McEllrath | $478 |
| Claire Stephens | $354 to $467 |

The Court finds the above rates to be reasonable hourly rates for the Kirkland associate attorneys' services in this case.

### c. Paralegals

Plaintiff seeks the following rates for the time Kirkland paralegals expended on this case.  d/e 232, Ex. 6D, p. 2.

| Name | Rate per hour |
|------|---------------|
| Emily N. Malloy | $179 to $220 |
| Nicholas Perrone | $200 to $220 |
| Ana Simon | $220 |
| Gary M. Vogt | $200 to $220 |

In the Central District of Illinois, attorneys seldom charge such rates.  Paralegals were recently awarded an hourly rate of $100.

See Andrew F. v. Kijakazi, No. 419CV04194SLDJEH, 2021 WL 5311328, at *4 (C.D. Ill. Nov. 15, 2021) (court finds "an hourly rate of $100.00 is more in line with the market rate for paralegal work in this geographic area") (citing Mark W. v. Saul, No. 4:18-cv-04064-SLD-JEH, 2019 WL 7500526, at *3 (C.D. Ill. Sept. 23, 2019)). Plaintiff does not point out particular specialized training or experience in the submitted paralegals' resumes to warrant a higher rate. As a result, the Court finds that $100 per hour is reasonable for paralegals Mallory, Perrone, Simon, and Vogt.

### d. Additional Support Staff

Plaintiff seeks $220 per hour for the time Lina Slenys, Presentation Design Specialist, expended on this case. d/e 232, Ex. 6, ¶ 23. Plaintiff also seeks $199 to $220 per hour for the time Jeremy Young, Trial Technology Specialist, expended on this case. Id. Plaintiff indicates that these additional support staff created demonstratives and tech support in preparation for and during trial. d/e 232, Ex. 6, p. 5 n.5, 6.

In the Central District of Illinois, support staff were recently awarded an hourly rate of $40. See Billy W. C. v. Kijakazi, No. 4:21-cv-04003, 2022 WL 1306731, at *3 (C.D. Ill. May 2, 2022).

Plaintiff does not provide any affidavits or resumes highlighting specialized training or experience to justify a higher rate.  As a result, the Court finds that $100 per hour is reasonable for additional support staff.

### ii.   Quinn

Plaintiff also seeks a rate of $612 per hour for the time Christina Sharkey expended on this case after leaving Kirkland and joining Quinn.  d/e 232, Ex. 11, ¶ 10.  The Court has previously discussed Sharkey's qualifications.  <u>See</u> supra Section III.B.1.i.a.

Sharkey does not include any affidavits attesting to the reasonableness of the rate she requests.  Rather, the requested rate reflects the Fitzpatrick rate schedule and a fraction (0.42) of Sharkey's standard rate.   d/e 232, Ex. 11, ¶ 10.

For the aforementioned reasons, taking into consideration Sharkey's professional experience, the complex nature of this matter, the rates awarded by other courts in the Central District of Illinois, and the possibility of Plaintiff obtaining local counsel, <u>see</u> supra III.B.1.i.a, the Court finds an hourly rate of $510 reasonable for Sharkey's services in this case.

### iii.   UPLC

### a. Attorney Alan Mills

Plaintiff seeks a rate of $1,000 per hour for the time Alan Mills, an attorney with over forty years of experience with expertise in prisoners' rights litigation, expended on the case. d/e 233, pp. 7–8. Plaintiff asserts that there are only a few lawyers in Illinois with similar levels of knowledge. Id. at p. 7.

Mills worked with James P. Chapman & Associates for ten years, where he was involved in federal class action cases and prisoner cases. d/e 233, Ex. 2, ¶ 4. He became UPLC's Legal Director in 1992 and assumed the Executive Director role in 2018. Id. at ¶ 6. In support of his rate, Mills lists the numerous cases in which he has represented Illinois prisoners in civil rights cases and cases involving sexual assault. Id. at ¶¶ 9, 10, 11.

In further support of Mills' rate, Mills references the Laffey Matrix, which indicates that the hourly rate for an attorney with more than twenty years of experience is $1,057 per hour. Id. at ¶ 15. While the Court agrees that the Laffey Matrix, "a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area," is a useful indicator, it is not particularly dispositive as to the

prevailing market rate for attorneys in the Central District of Illinois.  Pickett, 664 F.3d 632, 649–50 (7th Cir. 2011) (noting that although courts outside the District of Columbia have applied the Laffey Matrix, only the D.C. Circuit has formally adopted it while other courts "have viewed it with differing levels of praise and skepticism" and expressed concerns about its utility in other geographic areas).  Moreover, the D.C. Circuit found deficiencies in the Laffey Matrix, recently choosing to apply the Fitzpatrick Matrix instead.  See DL v. District of Columbia, 924 F.3d 585, 594 (D.C. Cir. 2019) ("the Laffey matrix may well—like shoulder pads, eight-tracks, and other '80s fads before it—be losing its shine."); Bond ex rel. K.M. v. Friendship Pub. Charter Sch. Bd. of Trs., No. 23-cv-367-ZMF, 2023 WL 8710370 (D.D.C. Dec. 18, 2023); Brackett v. Mayorkas, No. 17-988 (JEB), 2023 WL 5094872 (D.D.C. Aug. 9, 2023).

To further justify Mills' hourly rate, Plaintiff submitted a declaration from Attorney Kimball Anderson, a partner at Winston & Strawn LLP in Chicago, Illinois.  d/e 233, Ex. 6.  Based on Anderson's own experience and knowledge of rates charged by other attorneys with similar specialized knowledge, Anderson opines that

$1,500 per hour is a reasonable rate for Mills' legal services.  Id. at pp. 2–5.

### b. Attorney Nicole Schult

Plaintiff seeks an hourly rate of $750 for Nicole Schult, an attorney with twelve years of experience in complex civil litigation and specialized expert in prisoners' rights and sexual assault in Illinois' prisons.  d/e 233, Ex. 1, ¶ 15.  She has worked at UPLC since graduating from Boston University School of Law in 2011.  Id. at ¶¶ 16, 17.  She was promoted to Legal Director in 2020.  Id.  at ¶ 16.  She has been involved in nine class action prisoner's right cases and thirteen cases against the Illinois Department of Corrections.  d/e 233, p. 8.

In her declaration, Schult reports that her specialized knowledge of the Illinois prison system allows her to work more efficiently than other attorneys.  d/e 233, Ex. 1, ¶ 24; see Nat'l Rifle Ass'n v. Vil. of Oak Park, 871 F. Supp. 2d 781, 786 (N.D. Ill. June 25, 2012) (listing attorney's efficiency as a relevant factor when considering a reasonable rate).

To further justify Schult's hourly rate, Plaintiff submitted declarations from Attorneys Harold Hirschman and Kimball

Anderson, both who have worked with Schult for several years.  d/e 233, Ex. 4, 6.  Based on their experiences and knowledge of rates charged by other attorneys with similar specialized knowledge, Hirschman and Anderson opine that $750 and $1,150 per hour, respectively, are a reasonable rate for Schult's legal services.  Id. Attorney Sarah Grady, who has a similar number of years of practice as Schult with a concentration in prisoners' rights litigation, opines that the market rate for Schult is at least $750 per hour.  d/e 233, Ex. 5.

### c. Attorney Elizabeth Mazur

Plaintiff seeks an hourly rate of $600 for Attorney Elizabeth Mazur.  d/e 233, p. 9–10.  Mazur graduated from University of California, Berkeley School of Law in 2005.  d/e 233, Ex. 3, ¶ 2. Prior to joining UPLC in 2018, Mazur clerked for Judge M. Blane Michael on the U.S. Court of Appeals for the Fourth Circuit, worked as a Skadden Fellow with the Sargent Shriver National Center on Poverty Law, and spent ten years litigating civil rights cases at Loevy & Loevy.  Id. at ¶¶ 4–6.  She is currently a partner at Hughes Socol Piers Resnick & Dym, Ltd., where she primarily represents

clients in civil rights and civil complex litigation.  <u>Id.</u> at ¶ 8.  She
charges her clients $520 per hour.  <u>Id.</u>

In November 2023, her hourly rate was adjudicated at $400
per hour in <u>Rodesky v. Pfister</u>, a case concerning medical care and
ADA accommodations for a diabetic man in Pontiac Correctional
Center.  <u>Id.</u> at ¶ 12.

### d. Attorney Sarah Blair

Plaintiff seeks an hourly rate of $450 for Attorney Sarah Blair,
a 2019 graduate of Harvard Law School.  d/e 233, p. 10.  In law
school, Blair focused on prisoner civil rights and post-conviction
relief.  d/e 233, Ex. 1, ¶ 31.  At UPLC, Blair focused on issues and
cases related to Logan.  <u>Id.</u>

For Mills, Plaintiff did not indicate what hourly rates courts
have awarded him in similar cases.  The declaration from Kimball
Anderson supporting an hourly rate of $1,500 for Mills is based on
his "knowledge of rates charged by attorneys in private practice[.]"
d/e 233, Ex. 6, pp. 4, 5.  This declaration is largely irrelevant as
UPLC, a "small, non-profit legal-aid organization," is not
comparable to Kirkland, a large global firm, or other private law
firms.  d/e 233, p. 2.  The Court will set Mills' hourly rate at $450.

See <u>Rodesky v. Pfister</u>, No. 15-cv-1002-JEH, 2023 WL 2585856, at

\*5 (C.D. Ill. Feb. 21, 2023) (awarding Mills a rate of \$450 per hour

in a § 1983 action).  This reflects Mills' forty years of experience and

specialized experience in § 1983 litigation.

   For Schult, an attorney who has been licensed for thirteen

years, while Plaintiff provided a list of prison litigation Schult served

as counsel, Plaintiff did not discuss her prior awarded fees.   <u>See</u>

d/e 233, Ex. 1, pp. 7–8.  Moreover, the declarations provided by

UPLC in support of Schult's rate of \$750 per hour are largely

irrelevant.  For instance, Schult asserts that her rate of \$750 per

hour is "near the billing rates private practice attorneys with

complex litigation experience, as noted in Kirkland's petition for

fees." d/e 233, Ex. 1, p. 9.  Moreover, the affidavit submitted by

Harold Hirschman attesting to Schult's proposed \$750 hourly rate

is based on Hirschman's "knowledge of rates charged by attorneys

in private practice[.]" d/e 233, Ex. 4, p. 3.  Similarly, Sarah Grady's

declaration in support of Schult's \$750 hourly rates appears to be

primarily based on Grady's familiarity with "attorney fee rates in

Chicago and, to a lesser extent, nationally." d/e 233, Ex. 5, p. 5.

The declaration from Kimball Anderson supporting an hourly rate of

$1,150 for Schult is based on his "knowledge of rates charged by attorneys in private practice[.]"  d/e 233, Ex. 6, pp. 4, 5.  As discussed, UPLC, a "small, non-profit legal-aid organization," is not comparable to other private law firms.  d/e 233, p. 2.  Thus, the attached declarations are insufficient for establishing UPLC requested hourly rate.  The Court will set Schult's hourly rate at $350.  See Rodesky, No. 15-cv-1002-JEH, 2023 WL 2585856, at *5 (awarding Schult a rate of $350 per hour in a § 1983 action).  This rate reflects Schult's years of experience and specialized experience with the Illinois prison system.

For Mazur, an attorney who has been licensed for nineteen years, the Court will set Mazur's hourly rate at $400.  See Rodesky, No. 15-cv-1002-JEH, 2023 WL 2585856, at *5 (awarding Mazur a rate of $400 per hour in a § 1983 action).

For Blair, an attorney with "1-3 years of experience from 2019-2021," d/e 233, Ex. 1, ¶ 32, the Court will set Blair's hourly rate at $200.  See Rodesky, No. 15-cv-1002-JEH, 2023 WL 2585856, at *6 (awarding Blair a rate of $200 per hour in a § 1983 action).

The Court notes that UPLC requests rates higher than Kirkland because of UPLC's specialized knowledge of prisoner civil

rights cases.  However, Kirkland, as a large global private firm, has access to more litigation resources.  For the aforementioned reasons, taking into consideration the UPLC associate attorneys' professional experience, UPLC's specialized knowledge, the complex nature of this matter, the rates awarded by other courts in the Central District of Illinois, and the possibility of Plaintiff obtaining local counsel, see supra III.B.1.i.a, the Court finds the following hourly rates reasonable:

| Name | Rate per hour |
|------|---------------|
| Alan Mills | $450 |
| Nicole Schult | $350 |
| Elizabeth Mazur | $400 |
| Sarah Blair | $200 |

The Court finds the above rates to be reasonable hourly rates for the UPLC attorneys' services in this case.

**2. Plaintiff's Attorney Hours Claimed**

The second part of the lodestar calculation is the number of hours reasonably expended.  See Hensley, 461 U.S. at 433–34.  A fee applicant must provide sufficient documentation and exercise sound billing judgment.  Id.  The Court considers the number of hours worked, excluding the hours it deems inadequately documented or not reasonably expended on the litigation.  Id.; see

<u>Harper v. City of Chicago Heights</u>, 223 F.3d 593, 605 (7th Cir.
2000) ("[W]hen a fee petition is vague or inadequately documented,
a district court may either strike the problematic entries or (in
recognition of the impracticalities of requiring courts to do an item-
by-item accounting) reduce the proposed fee by a reasonable
percentage.").

Defendants object to the number of hours billed by Plaintiff's
attorneys as excessive.  d/e 254, p. 7.  Defendants object to: (1)
duplicative time entries; (2) secretarial tasks performed by attorneys
and paralegals; (3) quarter-hour incremental billing; (4) vague time
entries; (5) time entries relating to media relations; and (6) time
entries relating the Plaintiff's counsel's training and admittance to
the Central District of Illinois bar.  The Court addresses each in
turn.

### i. Duplicative Time Entries

Defendants assert that Plaintiff overstaffed this case and
unnecessarily duplicated work.  d/e 254, pp. 7–9.  Defendants
point out several examples, listed in Defendants' Exhibit A,
highlighted in yellow, including: having more than one attorney
attend the same conferences in December 2018, April 2021, July

2023, and September 2023; having more than one attorney attend the same depositions; and overstaffing at trial.  Id. at pp. 8–9.

Courts can reduce awards where the collaboration among attorneys has led to duplicative work and excessive billing. See Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 857–58 (7th Cir. 2009) ("[D]istrict courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.").  However, while "the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time," Jardien v. Winston Network, Inc., 888 F.2d 1151, 1160 (7th Cir. 1989), the mere fact that "two lawyers have billed for the same task does not mean that the hours should be deducted."  Gibson v. City of Chi., 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012); see also Tchemkou v. Mukasey, 517 F.3d 506, 511–12 (7th Cir. 2008) ("The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's [sic] trying to wade through the issue alone.").

This case was a complex, lengthy matter, culminating in a week-long trial.  It is reasonable for multiple attorneys to be staffed on such a large-scale matter.  Furthermore, given that over five years have elapsed since the commencement of this case, it is reasonable for attorneys to transition into and out of the case.  Accordingly, the Court declines to reduce Plaintiff's fee for duplicative billing.

### ii.  Secretarial Tasks

Defendants assert that the Court should strike hours of secretarial or clerical tasks billed by various attorneys and paralegals.  d/e 254, p. 9.  Secretarial tasks performed by attorneys or paralegals are not compensable.  Spegon, 175 F.3d at 553.  The relevant inquiry is whether the work is sufficiently complex to justify the efforts of a paralegal or attorney, as opposed to clerical personnel.  People Who Care, 90 F.3d at 1315.  Courts have found tasks including calling or drafting letters to court reporters, deliveries, organizing file folders, preparing documents, assembling filings, electronically filing documents, sending materials, and docketing or "logging" case events into an internal case tracking system, to be clerical and, thus, non-compensable.  See, e.g., Morjal

v. City of Chicago, Ill., No. 12 CV 185, 2013 WL 2368062, at *2

(N.D. Ill. May 29, 2013).

While Defendants state that some of the tasks performed by

"attorneys or paralegals" listed in Defendants' Exhibit A, highlighted

in orange, are secretarial, the Court's review of Defendants' Exhibit

A shows that the highlighted orange entries are attributable to

paralegals only.  d/e 254, p. 9; Ex. A.  The Court has reviewed the

paralegals' time entries and does not agree that all entries in their

entirety should be denied.  d/e 254, Ex. A.  The entries related to

preparing trial exhibits, research for trial, and reviewing expert

report do not appear to be clerical.  However, some of the entries for

tasks attributed to paralegals could have been performed by clerical

staff, such as preparing documents, calendaring, and electronically

filing documents.  For instance, Malloy logged hours with the

descriptions "prepare and electronically file same with court; review

recent correspondence and filings for integration into document

management system," "review recent correspondence and discovery

for integration into document management system," and "[r]econcile

case calendar per C. Sharkey request[.]"  d/e 254, Ex. A, p. 43.

Similarly, Perrone also logged hours relating to "contact court

reporter re receiving video files for deponents with no documents linked per J. Young's request[.]" <u>Id.</u> at p. 73.

In determining fees, "trial courts need not, and indeed should not, become green-eyeshade accountants" as "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011). Therefore, rather than scrutinizing ninety-eight pages of Kirkland's billing entries line-by-line, the Court finds that a twenty-five percent across-the-board reduction is warranted for Kirkland paralegals' billed hours.

The Court also examined UPLC's time entries for secretarial tasks. <u>See</u> d/e 233, Ex. 7, 8, 9, 10. 11. Some of the entries for tasks attributed to UPLC attorneys could have been performed by clerical staff. For instance, Schult logged time entries relating to "filing service waivers," "filing executed waivers of service," "filing Johnson waiver of service," "filing executive waiver, conf w/ CC re: address for Peek," and "filing waiver and checking service status[.]" d/e 233, Ex. 9, p. 1. For the same reasons as mentioned above, the Court finds that a five percent across-the-board reduction is warranted for UPLC attorneys' billed hours.

### iii.   Quarter-hour Incremental Billing

Defendants also argue that Plaintiff's attorneys regularly engaged in quarter-hour incremental billing, inflating the number of hours worked.  d/e 254, p. 10.  Quarter-hour incremental billing is the practice of rounding up billable hours to the nearest increment of fifteen minutes.  Id.  However, courts in the Seventh Circuit have found that billing in quarter-hour increments is acceptable if reasonable.  See La Salvia v. City of Evanston, No. 10 C 3076, 2012 WL 2502703, at *3 (N.D. Ill. June 28, 2012) (citations omitted) ("Quarter-hour billing is not per se unreasonable . . . but may be unreasonable under the facts and circumstances of a given case."); see also Williams v. Berryhill, No. 15 C 8106, 2017 WL 1355876, at *3 (N.D. Ill. April 13, 2017) (rejecting generic arguments against quarter-hour billing).  Here, Defendants have not provided sufficient analysis of the billing entries and their financial impact to allow the Court to determine whether such billing caused an inflated lodestar.  Accordingly, the Court declines to reduce Plaintiff's fee for quarter-hour incremental billing.

### iv.   Vague Time Entries

Defendants argue that several of Plaintiff's time entries are vague as to what claims or Defendants are the subject of the work. d/e 254, p. 11.  Defendants have identified those time entries, highlighted in green.  d/e 254, Ex. A.  "[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." Harper, 223 F.3d at 605.  The district court must "provide a concise but clear explanation of its reasons for the fee award" that is sufficient to permit appellate review.  Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc., 776 F.2d 646, 658 (7th Cir. 1985) (citing Hensley, 461 U.S. at 437).

The Court has reviewed the billing entries, highlighted in green, identified in Defendants' Exhibit A.  The Court agrees with Defendants that many time entries contain an unsatisfactory cursory description.  For instance, on June 7, 2021, Attorney Stephens billed 6.25 hours with the description "[d]raft outline re summary judgment facts; review transcripts re same."  d/e 254, Ex. A, p. 63.  Additionally, on February 23, 2022, Attorney Wasdin

billed 3.25 hours with the description "[r]eview summary judgment filings."  d/e 254, Ex. A, p. 69.  The next day, Attorney Wasdin billed 6.00 hours with the description "[r]eview summary judgment filings and compile list of undisputed facts."  Id.  Such time entries should be disallowed because they may relate to claims or parties in which Plaintiff is not a prevailing party.  d/e 254, pp. 10–11; see supra Section III.A.  Further, the Court finds that the time entries are vague because given the extensive motions filed in this case, it is unclear from Kirkland's descriptions which motions for summary judgment the time entries relate to.  Other entries are similarly vague: for instance, on May 7, 2021, Attorney Becker billed 4.00 hours to "[r]eview transcripts as part of defendant evaluation."  d/e 254, Ex. A, p. 63.  As a result, the Court finds that a twenty-five percent across-the-board reduction is warranted for Kirkland attorneys' billed hours.  See Fox, 563 U.S. at 838.  This reduction also includes time attributable to dismissed Defendants Peek and McClellan.  See supra Section III.A.2.

The Court also examined UPLC's time entries for vague time entries.  See d/e 233, Ex. 7, 8, 9, 10, 11.  The Court finds that many of the time entries contain an unsatisfactory cursory

description.  For instance, Blair logged hours for "[r]eviewing discovery for MSJ response" on numerous occasions, without reference to which motions for summary judgment the time entries relate to.  d/e 233, Ex. 11, pp. 1–2.  As a result, the Court finds that a ten-percent across-the-board reduction is warranted for UPLC attorneys' billed hours.  See Fox, 563 U.S. at 838.

### v.    Media Relations

Defendants also argue that Plaintiff is not entitled to fees for time Plaintiff spent interacting with the media, highlighted in blue.  d/e 254, pp. 11–12; Ex. A.  Courts within the Seventh Circuit have disallowed fees relating to media communications.  See Reid v. Unilever United States, Inc., No. 12 C 6058, 2015 WL 3653318, at *9 (N.D. Ill. June 10, 2015); Craig v. Christ, No. IP 96–1570–C H/G, 1999 WL 1059704, at *9–10 (S.D. Ind. Sept. 10, 1999).  However, "some small amount of time spent reviewing [media] coverage is chargeable as a legal fee."  Wirtz v. City of South Bend, Ind., No. 3:11-CV-325-RLM-CAN, 2012 WL 589454, at *5 (N.D. Ind. Feb. 17, 2012).

Kirkland agrees to withdraw $7,088.50 in fees related to time spent on media communications ($708.50 for Kirkland, $6,380 for

UPLC, and $3,767.63 in fees related to time spent on training for remote depositions given the COVID-19 pandemic).  d/e 264, p. 3 n.2.  However, Plaintiff maintains that she should recover fees for the "small amount of time spent reviewing" existing media coverage. Id.  Additionally, Defendants do not object to entries reflecting review of media coverage.  d/e 254, p. 12.  Therefore, the Court reduces Plaintiff's fee by $7,088.50.

## vi.    Counsel's Training/Admittance to Central District of Illinois

Defendants also argue that Plaintiff is not entitled to fees relating to the preparation and processing of counsel's application to the Central District of Illinois, as well as the subsequent admission and swearing in of the attorneys.  d/e 254, p. 12. Defendants also oppose a grant of fees associated with *pro hac vice* applications.  Id.  Defendants have identified those time entries, highlighted in pink.  d/e 254, Ex. A.

In Brown v. Colgate-Palmolive Co., while the Court observed that the fees from *pro hac vice* filings were not compensable in a bill of costs award because it was unreasonable, the Court was silent on whether time spent preparing such applications are recoverable

as fees.  No. 1:04-cv-0782-DFH-WTL, 2006 WL 3197455, at *2 (S.D. Ind. May 17, 2006).  Plaintiff cites to a Northern District of New York case for the proposition that "time spent preparing . . . *pro hac vice* applications" is recoverable.  d/e 260, p. 11; <u>see</u> <u>Osterweil v. Bartlett</u>, 92 F. Supp. 3d 14, 36–37 (N.D.N.Y. 2015).

The Court has reviewed the pink highlighted entries and finds that entries relating to the preparation and processing of counsel's applications to the Central District of Illinois, as well as *pro hac vice* applications, are tasks that should have been performed by a paralegal.  <u>See</u> <u>Morjal</u>, No. 12 CV 185, 2013 WL 2368062, at *4 (the court agreeing that fees associated with preparing and reviewing attorney appearances should have been performed by a paralegal). While some entries associated with this task may be performed by a paralegal, some entries require attorneys at Kirkland to complete personal trial information and sign the application for admission to practice generally before Central District of Illinois.  Therefore, the Court declines to reduce Plaintiff's fee relating to the preparation and processing of counsels' application to the Central District of Illinois, as well as the subsequent admission and swearing in of the attorneys.

## C. Total Lodestar Amount

Based on the foregoing analysis, the total lodestar amount in this case is $2,041,578.52.  In summary, the Court has applied the following discounts to the logged hours:

- Secretarial Tasks
  - 25% reduction for Kirkland paralegals
  - 5% reduction for UPLC attorneys
- Vague Time Entries
  - 25% reduction for Kirkland attorneys
  - 10% reduction for UPLC attorneys

The lodestar consists of the following hours and rates for Plaintiff's attorneys and paralegals:

### Kirkland

| Name | Staff Level | Hours after Exclusion | Rate | Sub Total |
|------|-------------|-----------------------|------|-----------|
| Whitney L. Becker | Partner | 18.38 | $466 | $8,555.40 |
| Cassie Burns | Associate | 69.75 | $330 | $22,989.60 |
| Cassie Burns | Associate | 174.94 | $364 | $63,677.25 |
| Cassie Burns | Associate | 21.19 | $379 | $8,034.30 |
| Evelyn T. Cai | Associate | 339.19 | $416 | $141,102.00 |
| Christa C. Cottrell, P.C. | Partner | 1.88 | $466 | $874.50 |
| Christa C. Cottrell, P.C. | Partner | 2.44 | $497 | $1,210.95 |
| Christa C. Cottrell, P.C. | Partner | 2.63 | $508 | $1,333.50 |
| Christa C. Cottrell, P.C. | Partner | 27.38 | $574 | $15,702.30 |

| Britt Cramer | Partner | 40.31 | $446 | $17,995.50 |
|---|---|---|---|---|
| Britt Cramer | Partner | 153.00 | $510 | $78,091.20 |
| Rebecca Fitzpatrick, P.C. | Partner | 1.50 | $539 | $808.80 |
| Scott W. Fowkes, P.C. | Partner | 8.06 | $531 | $4,282.80 |
| Scott W. Fowkes, P.C. | Partner | 31.13 | $556 | $17,305.50 |
| Jessica Giulitto | Partner | 287.25 | $467 | $134,203.20 |
| Shannon L. Gonyou | Associate | 2.25 | $307 | $691.20 |
| Shannon L. Gonyou | Associate | 184.88 | $342 | $63,153.30 |
| Shannon L. Gonyou | Associate | 71.06 | $377 | $26,776.35 |
| James F. Hurst, P.C. | Partner | 2.25 | $578 | $1,301.40 |
| Sarah Legault | Associate | 17.25 | $442 | $7,631.40 |
| Emily N. Malloy | Paralegal | 7.69 | $100 | $768.75 |
| Emily N. Malloy | Paralegal | 154.69 | $100 | $15,468.75 |
| Emily N. Malloy | Paralegal | 195.56 | $100 | $19,556.25 |
| Emily N. Malloy | Paralegal | 31.31 | $100 | $3,131.25 |
| Emily N. Malloy | Paralegal | 1.13 | $100 | $112.50 |
| Jennifer Mancini | Associate | 184.31 | $388 | $71,513.25 |
| Diego Jorge Martinez-Krippner | Associate | 98.06 | $342 | $33,498.15 |
| Diego Jorge | Associate | 279.75 | $377 | $105,409.80 |

| | | | | |
|---|---|---|---|---|
| Martinez-Krippner | | | | |
| Diego Jorge Martinez-Krippner | Associate | 99.00 | $391 | $38,728.80 |
| Reid McEllrath | Associate | 143.06 | $478 | $68,441.10 |
| Nichole Perrone | Paralegal | 53.81 | $100 | $5,381.25 |
| Nichole Perrone | Paralegal | 0.19 | $100 | $18.75 |
| Nichole Perrone | Paralegal | 384.19 | $100 | $38,418.75 |
| Christina E. Sharkey | Partner | 1.13 | $344 | $387.00 |
| Christina E. Sharkey | Partner | 165.38 | $378 | $62,445.60 |
| Christina E. Sharkey | Partner | 171.56 | $411 | $70,546.50 |
| Christina E. Sharkey | Partner | 2.25 | $426 | $957.60 |
| Christina E. Sharkey | Partner | 0.19 | $450 | $84.45 |
| Christina E. Sharkey | Partner | 159.38 | $490 | $78,030.00 |
| Ana Simon | Paralegal | 163.50 | $100 | $16,350.00 |
| Lina Slenys | Presentation Design | 137.25 | $100 | $13,725.00 |
| Claire Stephens | Associate | 62.44 | $354 | $22,127.85 |
| Claire Stephens | Associate | 337.13 | $389 | $131,074.20 |
| Claire Stephens | Associate | 216.56 | $403 | $87,318.00 |
| Claire Stephens | Associate | 0.19 | $428 | $80.25 |
| Claire Stephens | Associate | 14.06 | $467 | $6,570.00 |

| Jenna Marie Stupar | Partner | 263.81 | $478 | $126,207.90 |
|---|---|---|---|---|
| Brian A. Verbus | Partner | 7.88 | $389 | $3,061.80 |
| Gary M. Vogt | Paralegal | 47.06 | $100 | $4,706.25 |
| Gary M. Vogt | Paralegal | 0.75 | $100 | $75.00 |
| Gary M. Vogt | Paralegal | 139.31 | $100 | $13,931.25 |
| Nick Wasdin | Partner | 16.13 | $366 | $5,908.20 |
| Nick Wasdin | Partner | 127.31 | $400 | $50,925.00 |
| Nick Wasdin | Partner | 32.44 | $433 | $14,038.95 |
| Nick Wasdin | Partner | 124.13 | $446 | $55,409.40 |
| Nick Wasdin | Partner | 8.44 | $471 | $3,975.75 |
| Nick Wasdin | Partner | 0.38 | $510 | $191.40 |
| Jeremy Young | Trial Technology Specialist | 0.50 | $100 | $50.00 |
| Jeremy Young | Trial Technology Specialist | 132.00 | $100 | $13,200.00 |
|  |  |  |  |  |
| Subtotal |  |  |  | $1,797,545.15 |
| Reduction for Media Relations |  |  |  | ($708.50) |
| Reduction for Remote Training |  |  |  | ($3,767.63) |
| **Total** |  |  |  | **$1,793,069.02** |

## Quinn

| Name | Staff Level | Hours after Exclusion | Rate | Sub Total |
|---|---|---|---|---|
| Christina E. Sharkey | Of Counsel | 195.4 | $510 | $99,654.00 |
|  |  |  |  |  |
| **Total** |  |  |  | **$99,654.00** |

**UPLC**

| Name | Staff Level | Hours after Exclusion | Rate | Sub Total |
|------|-------------|----------------------|------|-----------|
| Alan Mills | Partner | 22.19 | $450 | $9,983.25 |
| Nicole Schult | Partner | 324.28 | $350 | $113,496.25 |
| Elizabeth Mazur | Partner | 41.99 | $400 | $16,796.00 |
| Sarah Blair | Partner | 74.80 | $200 | $14,960.00 |
| | | | | |
| Subtotal | | | | $155,235.50 |
| Reduction for Media Relations | | | | ($6,380.00) |
| **Total** | | | | **$148,855.50** |

### D. Adjustment to the Lodestar Amount is Not Warranted.

Next, the Court may adjust the lodestar amount based on the 12 Hensley factors.  461 U.S. at 436.  However, there is a "strong presumption" that the lodestar amount represents the reasonable fee.  Perdue v. Kenny A., 559 U.S. 542, 554 (2010); City of Burlington v. Dague, 505 U.S. 557, 562 (1992).  Kirkland does not provide a specific recommendation, leaving it to the Court's discretion, while UPLC requests an 2x fee enhancement.  d/e 232, p. 8 n.5; d/e 233, pp. 10–14.  Defendants opposes the application of a multiplier.  d/e 254, p. 13.

A judge does not have "unlimited" discretion to award attorney's fees and "[i]t is essential that the judge provide a

reasonably specific explanation for all aspects of a fee determination, including any award of enhancement." Perdue, 559 U.S. at 558. In Perdue, the Supreme Court held that when calculating an award under Section 1988, "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee." Id. at 1673; see also Anderson v. AB Painting and Sandblasting Inc., 578 F.3d 542, 544 (7th Cir. 2009) (quoting Hensley, 461 U.S. at 434 n.9) ("However, 'many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'").

In support of the requested enhancement, UPLC points to the following: (1) the success obtained; (2) degree of novelty, difficulty, and skill required; and (3) opportunity costs and risk of litigation. These, however, do not support an enhancement, as they are already included in the lodestar calculation. See Perdue, 559 U.S. at 553 ("an attorney's performance" and the "novelty and complexity

of a case" are presumably reflected in the attorney's billable hours

and "may not be used as a ground for an enhancement"); see also

City of Burlington, 505 U.S. at 562–65 (noting that "an

enhancement for contingency would likely duplicate in substantial

part factors already subsumed in the lodestar[,]" and "concluding

that no contingency enhancement whatever is compatible with the

fee-shifting statutes").  Moreover, enhancements should not be

awarded without "specific evidence that the lodestar fee would not

have been 'adequate to attract competent counsel.'"  Purdue, 559

U.S. at 554 (citation omitted).  UPLC has not presented such

evidence.  According, the Court, in its discretion, declines to

increase or otherwise adjust its lodestar calculation.

### E. UPLC is Entitled to $1,349.01 in Costs Under 42 U.S.C. § 1988.

As the prevailing party in a civil rights case, Plaintiff is entitled

to recover litigation expenses incurred in prosecuting the case

pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988.  See 28 U.S.C.

§ 1920; 42 U.S.C. § 1988; Fed. R. Civ. P. 54(d); Downes v.

Volkswagen of America, Inc., 41 F.3d 1132, 1144 (7th Cir. 1994)

("[E]xpenses of litigation that are distinct from either statutory costs

or the costs of the lawyer's time reflected in hourly billing rates . . . are part of the reasonable attorney's fee allowed by the Civil Rights Attorney Fees Awards Act.").

Plaintiff's counsel UPLC seeks $1,349.01 in costs.  d/e 233, p. 14–15; Ex. 12, 13.  Defendants object to certain case expenses and asserts that most of Plaintiff's requested costs are not enumerated in 28 U.S.C. § 1920.  d/e 254, p. 14.  However, Defendants' § 1920 argument is misplaced because Plaintiff seeks reimbursement for travel costs (including mileage, car rental, gas, meals, hotels), subpoena costs, medical record costs, and trial clothing for client, as part of her attorney fees, pursuant to 42 U.S.C. § 1988.  These are reasonable costs.  Accordingly, Plaintiff is entitled to $1,349.01 in costs.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' motion for attorney's fees and costs (d/e 232, 233) is GRANTED in part and DENIED in part.  The Court, in its discretion, awards Plaintiffs $2,041,578.52 in attorney's fees ($1,793,069.02 for Kirkland, $99,654.00 for Quinn, and $148,855.50 for UPLC) and $1,349.01 in costs for UPLC.

ENTERED:  March 28, 2024.
FOR THE COURT:

*/s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE